UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | | |
|---|---|---|
| GREGORY THOMPSON, | ) | |
| | ) | |
| Petitioner, | ) | |
| v. | ) | No. 1:04-cv-177 |
| | ) | *Edgar/Shirley* |
| RICKY BELL, WARDEN, Riverbend | ) | |
| Maximum Security Institution, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION

# TABLE OF CONTENTS

*Gregory Thompson*
*v.*
*Ricky Bell, Warden, Riverbend Maximum Security Institution*

**No. 1:04-cv-177**
**Eastern District of Tennessee at Chattanooga**

I.   FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.  STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

III. DISCUSSION - THOMPSON'S CLAIMS FOR RELIEF . . . . . . . . . . . . . . . . . . . . . . . 7

   A.   Competency-To-Be-Executed Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
        1.   State Court Proceedings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
        2.   *Ford v. Wainwright*, 477 U.S. 399 (1986) . . . . . . . . . . . . . . . . . . . . . . . 9
        3.   *Van Tran v. State*, 6 S.W.3d 257 (Tenn. 1999) . . . . . . . . . . . . . . . . . . . 11
        4.   Thompson's State Court Proceedings on His
             Petition of Incompetency to be Executed . . . . . . . . . . . . . . . . . . . . . . . 13
             a.   Dr. John S. Rabun . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
             b.   Dr. George W. Woods . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
             c.   Dr. Faye E. Sultan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
             d.   Dr. Michael B. First . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
        5.   No-Substantial-Change Decision . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
        6.   Conclusion: Competency-To-Be-Executed Claim . . . . . . . . . . . . . . . . . 29
             a.   The States Shall Not Execute The Insane . . . . . . . . . . . . . . . . . 32
             b.   Tennessee's Implementation of *Ford v. Wainwright* . . . . . . . . 33
             c.   Tennessee's *Ford* Proceedings Failed
                  to Satisfy Due Process . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35
                  (1)   The Tennessee Supreme Court Failed
                        to Consider Relevant Evidence . . . . . . . . . . . . . . . . . . . 38
                  (2)   Refusal to Consider Thompson's Ability
                        to Prepare for Death . . . . . . . . . . . . . . . . . . . . . . . . . . . 40
                  (3)   Unreasonable Application of
                        Presumption of Competency . . . . . . . . . . . . . . . . . . . . . 41
                  (4)   Denial of Hearing Based on
                        Incorrect Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42
                  (5)   Tennessee Supreme Court's
                        Inadequate Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44
                        (a)   Disqualified Jurist . . . . . . . . . . . . . . . . . . . . . . . 44

|  |  | (b) | Denial of Neutral and Independent Adjudication of Facts and Law | . . . . . . . . . . . . . 48 |

                           (b)      Denial of Neutral and Independent
                                       Adjudication of Facts and Law . . . . . . . . . . . . . 48
                       (6)       Denial of Opportunity to
                                         Offer Relevant Evidence . . . . . . . . . . . . . . . . . . . . . . . . 49

    B.      Unconstitutional to Execute Mentally Ill Persons Whose Illness Results in Mental Deficiencies Which Diminish Capacity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

         1.      Procedural Default . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

    C.      Executing the Chemically Competent is Unconstitutional . . . . . . . . . . . . . . . . . 53

         1.      Procedural Default . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54
         2.      Timeliness of Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55
         3.      Failure to State a Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

    D.      Execution Violates International Legal Obligations . . . . . . . . . . . . . . . . . . . . . . 60

         1.      Second or Successive Habeas Application . . . . . . . . . . . . . . . . . . . . . . . 60
         2.      Procedural Default . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 61

    E.      Present Insanity Hearing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 62

         1.      State Court Imposed an Unjustified Presumption of Competency . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 63
         2.      Satisfaction of "Threshold Showing" . . . . . . . . . . . . . . . . . . . . . . . . . 65
         3.      Evidentiary Hearing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 67

IV.     CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 70

-ii-

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

GREGORY THOMPSON,                          )
                                           )
        Petitioner,                        )
                                           )
v.                                         )        No. 1:04-cv-177
                                           )        *Edgar/Shirley*
RICKY BELL, WARDEN, Riverbend              )
Maximum Security Institution,              )
                                           )
        Respondent.                        )

## **MEMORANDUM OPINION**

Gregory Thompson ("Thompson" or "petitioner"), a death-sentenced inmate at the Riverbend

Maximum Security Institution in Nashville, Tennessee, brings this twice amended petition for writ

of habeas corpus against the Warden, Ricky Bell ("State" or "respondent"), pursuant to 28 U.S.C.

§ 2254 [Court File No.41] challenging his competency to be executed. In *Ford v. Wainwright*, 447

U.S. 399 (1986), the United States Supreme Court held that the Eighth Amendment prohibits the

execution of a prisoner who is insane. Following the concurring opinion of Justice Powell in *Ford*,

courts have concluded that "insanity" in this context means that a prisoner is insane only if the

prisoner is not aware of his or her impending execution and the reason for it. *Ford*, 477 U.S. at 422;

*Coe v. Bell*, 209 F.3d 815, 826 (6th Cir. 2000). On the exercise of its inherent supervisory authority,

the Tennessee Supreme Court in *Van Tran v. State*, 6 S.W.3d 257 (1999) adopted Justice Powell's

standard for determining insanity, and established a procedure by which a prisoner might challenge

his competency to be executed. These procedures, required by due process, were approved by the

Sixth Circuit Court of Appeals in *Coe*, 209 F.3d at 825. One part of this procedure is that the

1

prisoner must make a threshold showing that he meets the *Ford* definition of insanity in order to obtain a hearing on the competency petition.

The Tennessee State courts have determined that Thompson failed to make such a showing. Specifically they have held that Thompson has not made a threshold showing that there is a disputed issue regarding his present competency, thus dismissing Thompson's petition. *Thompson v. State*, 134 S.W.3d 168, 183 (Tenn. 2004). By order entered, December 13, 2005, the Tennessee Supreme Court reaffirmed this conclusion, after considering additional submissions. In this "competency to be executed" petition, Thompson claims that the conclusion reached by the state courts was erroneous.

After carefully reviewing the amended petition [Court File No. 41], the State's responses [Court File No. 14,44], petitioner's replies [Court File No. 18, 48], and the state court record, this Court finds the conclusions reached by the state court were neither based on an unreasonable determination of the facts, nor contrary to federal law. Petitioner's petition for writ of habeas corpus will be **DISMISSED**.

## I.
## FACTUAL BACKGROUND

The present petition is limited to issues concerning Thompson's competency to be executed. Thompson was convicted for the first-degree murder of Brenda Blanton Lane in 1985 and sentenced to death. After Thompson's first-degree murder conviction and death sentence were upheld on direct appeal[1] and state post-conviction relief was denied,[2] Thompson sought federal habeas corpus relief.

---

[1]     *State v. Thompson*, 768 S.W.2d 239 (Tenn. 1989).

[2]     *Thompson v. State*, 958 S.W.2d 156 (Tenn.Crim.App. 1997).

2

This Court granted summary judgment for the State, and the United States Court of Appeals for the Sixth Circuit, on January 9, 2003, affirmed.[3] The United States Supreme Court denied certiorari.[4]

On March 1, 2004, Thompson filed a petition in state court asserting he was incompetent to be executed. The Tennessee Supreme Court remanded the matter to the Coffee County Circuit Court, where Thompson was originally tried and convicted, ordering that the competency issue be determined under the procedures set out in *Van Tran v. State*, 6 S.W.3d 257 (Tenn. 1999). Thompson filed a petition supported by numerous documents including the reports of three experts asserting he was incompetent to be executed, while also acknowledging that Thompson was aware he was facing the death penalty because he was convicted of murder. The state court determined Thompson failed to meet the "high threshold showing" necessary to require a hearing on his petition. Specifically, the court dismissed Thompson's petition on March 8, 2004, without an evidentiary hearing, concluding that his evidentiary submissions demonstrated he was "aware that he is under a death sentence for the murder of Brenda Lane[.]" The Tennessee Supreme Court affirmed the trial court's denial on May 12, 2004. *Thompson v. State*, 134 S.W.3d 168 (Tenn. 2004).

On June 14, 2004, Thompson filed a petition for a writ of habeas corpus requesting an evidentiary hearing on his competency-to-be-executed claim. Meanwhile, on June 23, 2004, the Sixth Circuit Court of Appeals amended and reissued the opinion that it had originally filed on January 9, 2003, in the original habeas petition. The Sixth Circuit vacated this Court's judgment dismissing Thompson's original habeas petition and remanded the case to this Court. The State petitioned the United States Supreme Court for certiorari which was granted. The United States

---

[3]     *Thompson v. Bell*, 315 F.3d 566 (6th Cir. 2003).

[4]     *Thompson v. Bell*, 540 U.S. 1051 (2003).

3

Supreme Court reversed the Sixth Circuit Court of Appeals amended opinion.[5] This effectively ended the litigation on Thompson's original habeas petition. This Court then permitted Thompson to proceed with the instant habeas petition challenging the state court's decision on his competency-to-be-executed claim.

On September 16, 2005, this Court lifted the stay of execution to permit the State to file a motion to set an execution date and allow Thompson to raise the issue of his present mental competency to be executed in his response to the State's motion to set an execution date [Court File No. 19].[6] At the conclusion of the state court proceedings Thompson filed a motion to stay execution [Court File No. 25] which the Court granted on January 5, 2006, permitting Thompson to proceed with the instant habeas petition [Court File No. 28]. Thompson has filed an amended petition [Court File No. 41] replacing all prior "competency to be executed" petitions filed in this case, and the State has filed its response. On February 3, 2006, this Court issued a clarifying order that Thompson's stay of execution is in effect until further order of the Court [Court File No. 29]. In addition, Thompson was permitted to engage in limited discovery [Court File No. 40].

Presently before the Court is Thompson's second motion for discovery [Court File No. 45]. Thompson is requesting to depose internal affairs investigators and persons with knowledge of the facts obtained during the investigation of Thompson's mental state, so that he may gain access to evidence relevant to his *Ford* clam. The State maintains petitioner is mistaken because no such investigation ever occurred.

---

[5]     *Bell v. Thompson* 125 S.Ct. 2825 (2005).

[6]     The State court had resolved Thompson's previous competency-to-be-executed claim in May of 2004.

4

Because Thompson's expert reports reflect that he meets the tests for competency under *Ford v. Wainwright*, 477 U.S. 399 (1986), and *Van Tran v. State*, 6 S.W.3d 257 (Tenn. 1999), and because he has failed to show good cause for the requested discovery, Thompson's second motion for discovery will be **DENIED** for failure to demonstrate good cause [Court File No. 45].

## II.
## STANDARD OF REVIEW

This Court has jurisdiction over the present petition under 28 U.S.C. § 2254. The provisions of the Antiterrorism and Effective Death Penalty Act ("AEDPA") apply for purposes of this Court's analysis. Under AEDPA federal courts reviewing a state court decision may only grant a petition for writ of habeas corpus where the state court proceedings:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In determining whether the competency-to-be-executed claim is a mixed question of law and fact or strictly a question of fact, the Court is guided by *Coe v. Bell*, 209 F.3d 815 (6th Cir. 2000). In *Coe*, the Sixth Circuit observed that if a competency-to-be-executed claim is a question of fact, the state court determination is entitled to the presumption of correctness, and the petitioner must rebut the presumption by clear and convincing evidence. In addition, the habeas petition must be denied unless the state court decision was based on an unreasonable determination of the facts in light of the evidence at the hearing. *Id.* at 926.

If competency-to-be-executed is a mixed question of law and fact, the Sixth Circuit concluded the presumption of correctness does not apply, and the analysis must be under

5

§ 2254(d)(1) – the contrary to, or unreasonable application of, clearly established federal law prong. *Id.* A state court decision will be contrary to the United State Supreme Court precedent if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the "state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [Supreme Court] precedent." *Williams v. Taylor*, 529 U.S. 362, 406 (2000). A state court decision will involve an unreasonable application of Supreme Court precedent if the state court correctly identifies the governing legal rule from Supreme Court precedent but applies it unreasonably to the facts of the state case, or if the state court unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. *Id.* at 407-08. When conducting the "unreasonable application" inquiry, *Williams* directs a federal habeas court to "ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409.

The United States Supreme Court has acknowledged that "it is sometimes difficult to distinguish a mixed question of law and fact from a question of fact[.]" *Id.* at 408. Without deciding whether competency to be executed is a mixed question of law and fact or a question of fact, the Sixth Circuit applied the standard of review most favorable to the habeas petitioner, *Coe, i.e.,* §2254(d)(1) -- whether the state courts' decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." Following the Sixth Circuit's lead, the Court will apply the standard of review most favorable to Thompson, *i.e.*, § 2254(d)(1) -- whether the state courts' decision "was contrary to, or

6

involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."

## III.
## DISCUSSION
## THOMPSON'S CLAIMS FOR RELIEF

Thompson claims that his execution will violate the Eighth Amendment because he is incompetent to be executed. Thompson maintains that he is insane and his death sentence should be vacated and a life sentence should be imposed.[7] Although the precise issue before the Court in this habeas proceeding is whether the state court's decision that Thompson failed to meet the threshold requirements for an evidentiary hearing on his competency-to-be-executed claim was unreasonable or contrary to Supreme Court precedent, Thompson has subsumed this issue within sub-claims I, II, and III of his amended petition. The Court will address Thompson's competency-to-be-executed claim and his three sub-claims separately.

### A.    Competency-To-Be-Executed Claim

First, the Court will consider Thompson's competency-to-be-executed claim. Thompson argues, that the state courts erred by failing to follow the proper legal standard under *Ford v.*

---

[7]    The *Van Tran* court noted that one of the most difficult procedural questions, and the one most in need of legislative response, is what is to be done with a prisoner who is not competent to be executed. However, the court did *not* suggest that an appropriate answer to this difficult procedural question was to vacate the death sentence and impose a life sentence. Rather, the court stated the issue should be clarified by legislation but until and unless a statutory review procedure is adopted, the *Van Tran* court concluded that the order staying the execution shall direct the parties to submit a status report, summarizing the prisoner's mental condition, every six months to the Tennessee Supreme Court. When and if the status report indicates the prisoner has regained competency, the Tennessee Supreme Court will remand the case to the trial court for a hearing to determine whether the prisoner has regained competency so that an execution date may be scheduled. At that hearing, the burden shall be on the State to prove competency by a preponderance of the evidence. *Van Tran v. State*, 6 S.W.3d at 272-73.

7

*Wainwright*, 477 U.S. 399 (1986). In the alternative, Thompson argues the state courts' determination that he failed to meet the threshold showing necessary to demonstrate that there is a genuine, disputed issue as to his competency is clearly wrong, contrary to and/or an unreasonable application of, federal law and an unreasonable interpretation of the facts. Finally, Thompson asserts that his severe mental illness and psychotic delusions render him insane, and his execution, would violate the Eighth Amendment [Court File No. 41, at 58-60].

Thompson declares he is insane and that the State, "knowing of his severe mental illness, has been submerging him in an ocean of drugs." [Court File No. 41, at 58]. Thompson asserts that he "is medicated every day, twice a day, with mood stabilizing and anti-psychotic drugs. One day a week he is injected with yet another long-acting anti-psychotic drug." [Court File No. 41, at 58]. Thompson contends that his twenty years of medical history demonstrates he remains psychotic and delusional.

Although Thompson maintains the issue before this Court is whether his execution will violate the Eighth Amendment, he claims the state court did not directly address this issue but rather, only determined Thompson failed to make a threshold showing that his competency is genuinely at issue. The State contends that the Tennessee state courts correctly determined, based on Thompson's own evidentiary submissions, that he is presently aware of both the fact of his impending execution and the reason for it.

## 1. **State Court Proceedings**

The trial court decided on March 8, 2004, that Thompson was aware he is under a death sentence for the murder of Brenda Lane, and that Thompson did not reach the high threshold showing necessary to require a hearing on his petition wherein he claimed he was incompetent to be

8

executed. On May 12, 2004, the Supreme Court of Tennessee issued an eighteen page opinion, after conducting a *de novo* review of the trial court's determination that Thompson failed to establish a genuine issue regarding his present competency, affirming the trial court's decision. *Thompson v. State*, 134 S.W.3d 168 (Tenn. 2004). The trial court concluded:

> that all three of the expert reports submitted to the Court by Gregory Thompson demonstrate clearly that Thompson is presently aware that he is under a death sentence for the murder of Brenda Lane under the "cognitive" standard established by the Supreme Court. All that is necessary for competence to be executed is that the prisoner need only to be aware of the fact of his impending execution and the reason for it. *Van Tran*, supra. This Court finds and holds that these requirements have been met and are presently existing.

[Addendum 8, at 2-3]. The court concluded Thompson failed to reach the high threshold showing necessary to require a hearing on his petition and, in addition, that he is aware he is under a death sentence for murdering Brenda Lane. This finding necessarily results in a finding that Thompson is competent to be executed.

In 2005 when Thompson returned to state court so the parties could initiate state court proceedings for litigating Thompson's present competency, the Tennessee Supreme Court denied a hearing, finding that Thompson did not show that there had been a substantial change in Thompson's mental health since the previous determination of his competency to be executed in 2004.

### 2. *Ford v. Wainwright*, 477 U.S. 399 (1986)

The Eighth Amendment prohibits the State from inflicting the death penalty upon a prisoner who is insane. *Ford v. Wainwright*, 477 U.S. 399 (1986). The *Ford* decision, where the Supreme Court articulated that the Eighth Amendment prohibits the State from executing a prisoner who is insane, was a fractured opinion where the five-member majority, consisting of a four-member

9

plurality and a separate concurrence by Justice Powell, agreed on three matters. The Supreme Court

Justices agreed that: (1) the Eighth Amendment forbids a state from executing an insane person, *id.*

at 409-10; (2) Florida's governor violated *Ford's* due process rights when he failed to consider the

opinions of *Ford's* psychiatrist, *id.* at 413-16; and (3) *Ford* was entitled to an evidentiary hearing in

federal district court. *Id.* at 418.

Under the Florida procedure, when the governor was informed that a prisoner about to be

executed might be insane, the governor appointed three psychiatrists who examined the prisoner at

the same time and made a report to the governor. The governor then determined whether the

prisoner had the mental capacity to be executed. *Ford*, 477 U.S. at 412. The Supreme Court found

this process entirely devoid of due process because: (1) the prisoner was not permitted to present any

material relevant to his sanity to be executed; (2) the prisoner was not permitted to challenge the

opinions of the state-appointed psychiatrists or cross-examine the psychiatrists; and (3) the governor

was in complete control of the entire decision-making process. Because the Supreme Court

concluded that Florida's statue provided inadequate assurances for trustworthiness in its procedure

for determining whether a prisoner is competent to be executed, the *Ford* Court determined Ford was

entitled to a *de novo* evidentiary hearing in the United States District Court, on the question of his

competence to be executed. *Id.* at 418.

In concluding the Florida procedures for determining sanity to be executed were inadequate

to preclude federal redetermination of the constitutional issue, the *Ford* Court provided very little

guidance on the appropriate procedure for determining competency but did specifically explain:

> We do not here suggest that only a full trial on the issue of sanity will suffice to
> protect the federal interests; we leave to the State the task of developing appropriate
> ways to enforce the constitutional restriction upon its execution of sentences. It may
> be that some high threshold showing on behalf of the prisoner will be found a

10

necessary means to control the number of nonmeritorious or repetitive claims of insanity. *Cf. Pate v. Robinson*, 383 U.S. 375, 387, 86 S.Ct. 836, 843, 15 L.Ed.2d 815 (1966) (hearing on competency to stand trial required if "sufficient doubt" of competency exists).

*Id.* at 416-17.

Although the majority opinion in *Ford* did not address the meaning of sanity in this context, in his concurrence, Justice Powell concludes the Eighth Amendment only forbids the execution of those who are unaware of the punishment they are about to suffer and why they being executed. *Ford*, 477 U.S. at 422. Justice Powell specifically concluded the following standard appropriately defines the kind of mental deficiency that should trigger the Eighth Amendment prohibition: "I would hold that the Eighth Amendment forbids the execution only of those who are unaware of the punishment they are about to suffer and why they are to suffer it." *Id.* at 422. Furthermore, Justice Powell concluded the state may properly presume the petitioner who was competent throughout his criminal proceeding remains sane and "may require a substantial threshold showing of insanity merely to trigger the hearing process." *Id.* at 426. Justice Powell also explained that the question of petitioner's sanity calls for a basically subjective judgment; it depends substantially "on expert analysis in a discipline fraught with 'subtleties and nuances.'" *Id.* Justice Powell further observed that the question of competency for execution is independent of the validity of a prisoner's trial and sentencing, affecting only *when*, not *whether*, an execution may take place. *Id.* at 423.

### 3. *Van Tran v. State*, 6 S.W.3d 257 (Tenn. 1999)

The Tennessee legislature never enacted a statutory scheme for the determination of the competency of prisoners to be executed. *See Van Tran*, 6 S.W.3d at 263. In 1999, when the first execution in Tennessee in forty years was approaching, the Tennessee Supreme Court decided *Van Tran*. The *Van Tran* court promulgated a procedure adopting standards resembling Justice Powell's

11

definition in *Ford* of competency to be executed. As Justice Powell stated, and as many state statutes provide, at the hearing to determine whether the prisoner is competent to be executed, the prisoner is presumed to be competent. *Van Tran*, 6 S.W.3d 257. The prisoner must overcome this presumption of competency by a preponderance of the evidence. *Id.* at 270-71. During the hearing, the prisoner has the opportunity to be heard, to present evidence relevant to the issue of competency,[8] and to cross-examine the State's witnesses. *Id.* at 271.

In *Van Tran*, the Tennessee Supreme Court addressed both the standard for determining competency for execution in Tennessee and the procedures afforded state prisoners asserting *Ford* claims. The Tennessee Supreme Court, following Justice Powell's concurrence, adopted a "cognitive test" for competence, holding that, "under Tennessee law a prisoner is not competent to be executed if the prisoner lacks the mental capacity to understand the fact of the impending execution and the reason for it." *Van Tran,* 6 S.W.3d at 266.

It is important to note that in *Ford*, the Supreme Court held a Florida procedure deficient because the procedure afforded prisoners about to be executed no procedural safeguards. Unlike the Florida process, the Tennessee process meets the fundamental requirement of due process which is the opportunity to be heard. *See Grannis v. Ordean*, 234 U.S. 385, 394 (1914) ("The fundamental requisite of due process of law is the opportunity to be heard."); *Coe v. State*, 209 F.3d 815, 825 (6th Cir. 2000) ("In setting forth the procedures for handling a *Ford* claim, the Tennessee Supreme Court properly followed the narrow concurring opinion of Justice Powell in establishing the standard for

---

[8]     The *Van Tran* court noted that the rules of evidence "should not be applied to limit the admissibility of reliable evidence that is relevant to the issue of the prisoner's competency." *Van Tran v. State*, 6 S.W.3d at 271.

12

competency to be executed and by placing the burden of proof on the prisoner to make a threshold showing of incompetence for a hearing.")

The United States Court of Appeals for the Sixth Circuit has held that the procedures identified in *Van Tran* for handling a *Ford* claim, "are generally adequate to protect a prisoner's right to a fair hearing of his *Ford* competency claim as required by due process." *Coe v. Bell*, 209 F.3d 815, 822 (6th Cir.), *cert. denied*, 529 U.S. 1084 (2000). To make a sufficient showing that there is a genuine, disputed issue regarding the prisoner's competency, the evidence must relate to present competency; thus, the evidence from recent mental evaluations or recent observations of the prisoner is necessary. *See Coe*, 17 S.W.3d at 212. In addition, unsupported conclusory assertions will be insufficient to satisfy the required threshold showing. *Id.* In Tennessee, allegations that the prisoner is mentally ill are insufficient to meet the threshold showing requirement. In addition, the prisoner's unusual views about what occurs after the prisoner's execution are not pertinent to the question of his present competency. Accordingly, unless the prisoner submits materials that raise a genuine dispute as to his mental capacity to understand or be aware of the fact of the impending execution and the reason for it, the threshold showing has not been met. *Id.* at 220.

### 4. Thompson's State Court Proceedings on His Petition of Incompetency to be Executed

The Tennessee Supreme Court applied the above-stated governing legal principles to Thompson's petition and supporting documents. The record reflects that the State of Tennessee afforded Thompson counsel and gave him the opportunity to present any material for the court to consider in making a determination of whether he raised a genuine, substantial issue as to his competency-to-be-executed claim. Despite the opportunity to do so, Thompson failed to make a threshold showing of incompetence sufficient to warrant a evidentiary hearing on the issue. In

13

Tennessee the inmate is permitted to submit to the court any material relevant to the factfinder's decision about the individual's competency to be executed. Indeed, Thompson was permitted and did submit that evidence which he determined was relevant to the trial court's inquiry of his competency. In addition, he submitted evidence which he determined was relevant to the Supreme Court of Tennessee's inquiry regarding his claim of a change in his mental status.

The Tennessee Supreme Court found that the expert reports, conservatorship proceedings records, and the prison records did not establish a genuine issue of disputed fact regarding Thompson's competency to be executed. First, the court observed that approximately eight months prior to the court's review, Thompson's counsel was successful in having the Davidson County Probate Court terminate a conservatorship for Thompson that had been in place since March 2001.[9] Second, the Tennessee Supreme Court concluded a review of the attached prison records relating to Thompson's mental health illustrated Thompson remains aware that he has been sentenced to death for the murder of Brenda Lane. Third, the Tennessee Supreme Court found that the reports of Dr. Rabun, Dr. Woods, and Dr. Sultan were insufficient to raise a genuine issue regarding Thompson's present competency to be executed. Rather, the state supreme court concluded the expert reports

---

[9]     Incompetence is not the standard for appointment of a conservator under Tennessee law. In March 2001, Thompson was found to be "disabled" within the meaning of Tennessee Code Annotated section 34-1-101(7) and in need of the protection and assistance of a conservator. A "disabled person" is defined by the conservatorship statute as "any person eighteen (18) years of age or older determined by the court to be in need of partial or full supervision, protection and assistance by reason of mental illness, physical illness or injury, developmental disability or other mental or physical incapacity." Tenn. Code Ann. § 34-1-101(7)(2001).

*Thompson v. State*, 134 S.W.3d 168, 179 n.10 (Tenn. 2004).

14

indicated Thompson is aware of the fact of his impending execution and the reason for it. And finally, after acknowledging the final exhibits attached to Thompson's petition, *i.e.*, affidavits of Dana C. Hansen Chavis, Thompson's current attorney, and Michael R. Chavis, an investigator with the Federal Defender Services, the court concluded that although Thompson's petition and supporting exhibits establish that he is mentally ill, these submissions did not raise a genuine issue regarding Thompson's competency. *Thompson v. State*, 134 S.W. 3d at 179.

The Tennessee Supreme Court made some very specific findings when it reviewed the reports of the three mental health experts who concluded Thompson was not competent to be executed. The court determined that although the reports indicate Thompson suffers from mental illness, described as schizophrenia, chronic undifferentiated type, the reports did not present facts indicating Thompson is unaware of his impending execution and the reason for it.

> Although each of the experts ultimately opines that Thompson is presently incompetent to be executed, these opinions, standing alone with no underlying factual basis, are not sufficient to give rise to a genuine issue regarding Thompson's present competency. Significantly, the reports of all three experts either explicitly, or as part of the factual bases underlying their opinions, illustrate that Thompson presently is aware of the fact of his impending execution for the murder of Brenda Lane.

*Thompson v. State*, 134 S.W.3d at 180.

The Supreme Court of Tennessee provided a detailed and accurate summary of the medical testimony which the Court adopts herein and will not replicate. *See Thompson v. State*, 134 S.W.3d at 180-182. However, this district court has conducted its own review of all the evidence and will summarize herein the matters considered pertinent to the determination of petitioner's competency to be executed.

On March 1, 2004, Thompson submitted a petition in the Circuit Court of Coffee County, Tennessee, requesting a competency hearing. Thompson attached copies of records to his petition

15

which demonstrated he had been treated for mental illness for almost twenty years. Included in the records were reports of mental health professionals who offered their opinions that Thompson was not competent to be executed. In addition, Thompson's federal attorney and investigator submitted affidavits describing Thompson's delusional beliefs about his upcoming execution.

The State's response to Thompson's request for a competency hearing in the Circuit Court of Coffee County asserted that Thompson's submissions failed to create a genuine issue of disputed fact about his present competency for execution and, therefore, did not meet the threshold requirement under *Van Tran* for an evidentiary hearing. The Circuit Court of Coffee County agreed with the State and determined Thompson failed to create a genuine issue of disputed fact about his present competency for execution.

### a.   Dr. John S. Rabun

Dr. John S. Rabun, a psychiatrist from St. Louis, Missouri, conducted two interviews with Thompson: (1) March 17, 2003, lasting about two and one-half hours; and (2) January 19, 2004, lasting about two hours. In addition, Dr. Rabun reviewed numerous other sources of information. Dr. Rabun explained to Thompson that he had been retained "to form an opinion as to whether he is afflicted by a mental disease and his capacity to be executed" [Addendum No. 6, Exhibit 8]. Dr. Rabun advised Thompson he should consider his statements to the examiner on the record and cautioned him that it was likely that what he said would be included in a report to be reviewed by his attorney, the state's attorney, and the judge.

According to Dr. Rabun's report, Thompson first provided details of his personal family history to Dr. Rabun which appear to be consistent with other sources of his personal family history. After providing some accurate information, Thompson asserted he was not the product of his parents

16

because he did not look like them. Then, according to Dr. Rabun, Thompson derailed and began alleging he had raped his sister. Dr. Rabun's report discusses Thompson's delusions. In addition, Dr. Rabun's report reflects that when he questioned Thompson about the reason for his incarceration, Thompson "readily admitted that he 'killed Brenda Lane.'" [Addendum No. 6, Exhibit 8, at 7]. Thompson provided accurate details surrounding the murder and never claimed he was innocent or someone else committed the crime. Thompson explained that he was convicted of first degree murder, and during the second phase of his trial he was sentenced to death. Although Dr. Rabun explains that Thompson then derailed into a delusion, this Court notes that the delusion itself demonstrates Thompson is aware is of his conviction. Thompson stated that because he is actually a lieutenant in the Navy, the jury should have been composed of professional people, and since it was not, the case should be thrown out. Thompson also discussed the fact that his status as a lieutenant in the Navy is a mitigator so he should receive a second trial. Additionally, Thompson stated that his earning a Grammy award and having a million dollars will prove he is rehabilitated and not a criminal [Addendum No. 6, Exhibit 8, at 7]. These delusions acknowledge Thompson's conviction and incarceration.

Dr. Rabun explained that at times Thompson was focused and his thoughts were logical and goal-directed but at times he derailed onto delusional information. However, it is important to note what Dr. Rabun did not state; he did not state that when Thompson explained he was convicted of first degree murder and was sentenced to death Thompson did not understand what he was saying. Thompson told Dr. Rabun he did not think the State of Tennessee could execute him because the songs and the money would mitigate his sentence even though "we know who did the crime, me. . . ." [Addendum No. 6, Exhibit 8, at 13]. Thompson's delusions reflect that he is aware he is

17

sentenced to death for committing a crime. Dr. Rabun's conclusion that Thompson lacks the mental capacity to understand the fact of his impending execution and the reason for it is not supported by the factual evidence in his report. Moreover, Dr. Rabun has failed to reconcile the portion of his report reflecting that Thompson admitted he murdered Brenda Lane and was sentenced to death for that crime with his conclusion that Thompson lacks the mental capacity to understand the fact of his impending execution and the reason for it.

Finding that Dr. Rabun's ultimate opinion of incompetence was based upon Thompson's alleged delusional beliefs about his personal status and identity; the State's ability to carry out the death sentence; the likelihood that the sentence will actually be carried out; and what will happen to him upon execution, the Tennessee Supreme Court, noting they had previously rejected a prisoner's reliance on such delusional or unorthodox beliefs as irrelevant to the question of competency for execution in *Coe*, concluded that Dr. Rabun's report "clearly demonstrates Thompson's awareness of the details of the murder of Brenda Lane, the trial and sentencing proceedings resulting in his current death sentence, and further, that he accepts full responsibility for his actions." *Thompson v. State*, 134 S.W.3d at 181. Consequently, taking his report as a whole, Dr. Rabun's report supports the state courts finding that Thompson is aware he is sentenced to death for murdering Brenda Lane.

### b. Dr. George W. Woods

Thompson's second expert was Dr. George W. Woods. Dr. Woods' February 27, 2004 report reflects that he was asked to answer two specific questions:

18

1. Does Mr. Thompson suffer a mental disease/defect?
2. If he does suffer from a mental disease/defect, what impact does it have, if any on his competency to be executed?

[Addendum 6, Exhibit 10].

Dr. Woods interviewed Thompson on February 17, 2004, for approximately three hours. Dr. Woods advised Thompson, as did Dr. Rabun, that the meeting was not a clinical evaluation with the usual patient/doctor confidentiality understanding.

Dr. Woods concluded that Thompson suffers from a Schizophreniform Spectrum disorder, Schizophrenia, undifferentiated type. It is also Dr. Woods' opinion that Thompson's Schizophrenia is severe and ongoing. Additionally, Dr. Woods concluded Thompson is currently incompetent to be executed. However, there is no indication that Dr. Woods arrived at this conclusion after conducting the critical inquiry required by *Van Tran* – whether Thompson is aware of the fact of his impending execution and the reason for it.

Dr. Woods reported that Thompson suffers from bizarre delusions and is "most often lost in his own world for extended periods of time[.]" [Addendum No. 6, Exhibit 10, at 3]. Dr. Woods reported Thompson believes he cannot die and there will be a two-year period in which he will stay alive once he is executed. Thompson also has delusions about why he will not be executed, including a delusion that his current conviction will be reversed because his prior position as a lieutenant in the Navy entitles him to be tried by a military tribunal which he believes will exonerate him. Thompson's other delusions include his belief that he has buried gold bars and a Grammy Award that will buy him his freedom [Addendum No. 6, Exhibit 10, at 4], and his belief that after his death he will be in Hawaii [Addendum No. 6, Exhibit 10, at 3]. Again, this Court observes that

19

even Thompson's delusions acknowledge he was convicted of a crime and received the death penalty.

> Addressing his delusions, the Supreme Court of Tennessee explained,

> Thompson's beliefs about what will occur after his death or dissatisfaction with his conviction and sentence do not raise genuine issues regarding his competency for execution unless those beliefs preclude Thompson from being aware of the fact of his impending execution and the reason for it. Dr. Woods's report fails to illustrate that Thompson's beliefs pose such an impediment and therefore fails to establish a genuine issue under *Van Tran* regarding Thompson's present competency.

*Thompson v. State*, 134 S.W.3d at 182.

> Dr. Woods described Thompson's thought processes as follows:

> Thought processes were often initially intact, in that Mr. Thompson could give a brief direct response to a question. Upon deeper examination of whether he truly understood his response, Mr. Thompson often derailed and became extremely loose in his associations. His thought contents are grossly psychotic, grandiose, paranoid, and delusional.

[Addendum No. 6, Exhibit 10, at 6]. Dr. Woods indicates Thompson's delusions that electrocution will not kill him and that after Thompson is electrocuted he will live at least two years, relate specifically to his incompetence to be executed. Dr. Woods concludes Thompson is so impaired by his mental illness that he fits the United States Supreme Court's description of those deficits that preclude execution of the mentally retarded. There is nothing in Dr. Woods report to indicate that his opinion is based upon the appropriate legal standard for competence to be executed in Tennessee.

### c. Dr. Faye E. Sultan

The last report was provided by Dr. Faye E. Sultan, a psychologist who had conducted periodic psychological examinations of Thompson from 1998 until her last examination on January 28, 2004. Dr. Sultan diagnosed Thompson as suffering from the psychotic mental illness known as Schizophrenia, Undifferentiated Type. Dr. Sultan stated that "[i]n a non-medicated state, Mr.

20

Thompson is floridly psychotic. He is unaware of his surroundings and unable to identify individuals whom he knows well." [Addendum No. 6, Exhibit 12, at 2]. Dr. Sultan concluded Thompson is not competent to be executed in a non-medicated state.

However, Thompson is currently participating in a regular regimen of medications prescribed by the mental health staff at Riverbend Maximum Security Institution. Dr. Sultan acknowledges that Thompson states he knows he has been sentenced to death. However, she concludes Thompson lacks the capacity to understand the fact of his scheduled execution or the reason for it because of his delusional beliefs that his conviction will eventually be reversed and the death sentence will not be implemented. Once again, the Court observes that Thompson's delusions acknowledge his conviction and death sentence.[10]

The issue of Thompson's competency to be executed is a very narrow issue. Under *Van Tran*, 6 S.W.3d at 266, and *Coe v. Bell*, 209 F.3d 815, 826 (6th Cir. 2000), "only those who are unaware of the punishment they are about to suffer and the reason they are to suffer it are entitled to a reprieve." The record reflects that Thompson is aware he is sentenced to death for the murder of Brenda Lane.

The Tennessee Supreme Court concluded that Dr. Sultan's report was "insufficient to raise a genuine issue regarding Thompson's present competency to be executed. The expert reports

---

[10]     The Court considered the affidavit of counsel and petitioner's investigator. Both affidavits include Thompson's delusional response to being notified that his execution date had been scheduled. Although both affidavits included opinions that Thompson does not understand the reasons for and the implications of his execution date, neither affidavit sets forth any definition or guiding authority that indicates such opinion is based upon the appropriate legal standard for competence under Tennessee law. Moreover, neither affidavit sets forth any specific facts explaining the reason for such conclusion.

21

indicate, rather, that Thompson is aware of the fact of his impending execution and the reason for it." *Id.* at 182.

The state court concluded that Thompson knew he was going to be executed and why he was going to be executed – precisely the conclusion required by the *Ford* and *Van Tran* standard of competency. Accordingly, this conclusion is based on a reasonable determination of the facts presented to the state courts. Additionally, the state courts' adjudication of Thompson's competency-to-be-executed claim did not result in a decision that was contrary to, or involved an unreasonable application, of clearly established Supreme Court law.

### d. Dr. Michael B. First

Thompson presented this Court with a fourth expert opinion with his original competency-to-be-executed petition [Court File No. 1, Attachment H]. There is nothing in the record to indicate this report was first presented to the state courts. Nevertheless, this Court has reviewed Dr. First's April 27, 2004 report, observing that Dr. First apparently based his opinion on Thompson's records rather than personally interviewing him. Dr. First, a heavily credentialed clinical psychiatrist, reviewed Thompson's records and concluded his delusions render him unable to understand the fact of his impending execution. Dr. First maintains that Thompson "is unable to prepare himself, mentally and spiritually for his death because he holds the delusional belief with certainty that he will not be executed" [Court File No. 1, Attachment H, p. 2]. However, Dr. First fails to provide any factual support for his conclusions and fails to reconcile Thompson's statements that he received the death penalty for killing Brenda Lane with Dr. First's conclusion that Thompson firmly holds the delusional belief that he will not be executed.

22

Dr. First's report is cumulative–reaching the same conclusions as Dr. Sultan and, like Dr. Sultan, failing to reconcile Thompson's acknowledgment of his impending execution for murdering Brenda Lane with the conclusion that Thompson believes he will not be executed. Moreover, it does not appear that this report is properly before the Court, as there is no indication this report was considered by the State courts.

Subsequent to his competency-to-be-executed state proceedings, on September 29, 2005, Thompson returned to state court to pursue proceedings where he claimed he suffered from a change in his mental health. The Court will now address those proceedings.

## 5. No-Substantial-Change-Decision

On June 14, 2004, Thompson filed a petition for a writ of habeas corpus requesting an evidentiary hearing on his competency-to-be-executed claim. Other federal court proceedings relating to Thompson's original habeas petition prevented this Court from proceeding on Thompson's competency-to-be-executed claim until September 16, 2005, when this Court lifted the stay of execution to permit the State to file a motion to set an execution date and allow Thompson to raise the issue of present mental competency to be executed in response to the State's motion to set an execution date [Court File No. 19]. Thompson returned to state court and filed a Notice of Change in Mental Health Status asserting that since the Tennessee Supreme Court's previous determination finding he was competent to be executed, there has been a substantial change in his mental health which raises a substantial issue as to his competency to be executed.

In support of his Notice of Change in Mental Health Status, Thompson submitted the affidavit of Dr. Faye Sultan, who "noted that Thompson's psychiatric condition had deteriorated somewhat from the time of [her] last visit with him[.]" [File No. 17, Attachment B]. Dr. Sultan

23

averred that Thompson continued to experience major delusions and hallucinations. Further, Dr. Sultan stated "[a]lthough he knew, in a medicated state, that he had been sentenced to death, he held the delusional belief that it is impossible for him to be executed." [File No. 17, Attachment B].

Dr. Sultan explained that in the July 28, 2005 interview Thompson now believes all events in his life, including his involvement in the murder of Brenda Lane, are predestined. She stated his mental health status had changed in that he was louder and more expansive in his thoughts, and his behavior was more erratic and impulsive. Thompson reported experiencing more hallucinations and some severe suicidal thoughts. Dr. Sultan also observed that Thompson had requested additional medication to assist him in coping with these hallucinations and depressive thoughts and medical records reflected that, in fact, additional medication had been provided to Thompson in response to his request [File No. 17, Attachment B].

According to Dr. Sultan, "Thompson can speak about the subject of death on a purely theoretical level but cannot rationally talk about his own death. He insists that he will not die in an execution because 'the appropriate situation is not in place.'" [File No. 17, Attachment B]. Dr. Sultan concludes Thompson is not competent to be executed because he lacks the mental capacity to understand the fact of the impending execution and the reason for it.

In reply to the response filed by the State of Tennessee to Thompson's Notice of Change in Mental Health Status, Dr. Sultan subsequently supplemented her affidavit with an affidavit explaining what she meant in her initial affidavit [Court File No. 20]. Dr. Sultan avers that she is submitting her supplemental affidavit to clarify her opinion that Thompson is presently incompetent to be executed because he lacks the mental capacity to understand the fact of his impending execution, the reason for it, and he does not have the ability to meaningfully prepare for his own

24

death or assist his counsel. Dr. Sultan explains that Thompson continues to deteriorate substantially

as time goes on, and that the symptoms she identified in February 2004 continue to exist and prevent

Thompson from being competent to execute.

In clarification of her original statement that Thompson's psychological condition has

somewhat deteriorated, Dr. Sultan explained as follows:

> Whether I described his psychological condition as "somewhat" deteriorated,
> deteriorated or clearly changed, the extent of deterioration in Mr. Thompson's mental
> health condition is psychologically significant. In layman's terms, Mr. Thompson's
> mental health has changed and become substantially worse.

[Court File No. 20]. Dr. Sultan further explains that Thompson's ability to ask for additional

medication to help him deal with his mental illness only means he has some insight into his

condition, not that he has an understanding of his impending execution. Dr. Sultan describes

Thompson's beliefs regarding the impossibility of his execution as follows:

> Mr. Thompson continues to believe his execution is impossible. This belief has
> become more rigid or entrenched since my report of February 27, 2004. Since I
> began evaluating Mr. Thompson in 1998 his understanding is that it is impossible for
> him to be executed. As of July 28, 2005, Mr. Thompson's understanding about his
> own execution has not improved. Since 1998, Mr. Thompson's mental health status
> has been in flux but overall can be characterized as deteriorating. Specifically, on
> July 28, 2005, it was clear that his psychological condition has deteriorated and
> substantially changed. Mr. Thompson now holds additional irrational reasons for his
> understanding that he will not be executed. Mr. Thompson's irrational and
> delusional beliefs that it is impossible for him to be executed result from his severe
> psychotic mental illness. Although Mr. Thompson will sometimes acknowledge his
> involvement in the murder of Brenda Lane, as he did on July 28 , 2005, he
> simultaneously and irrationally believes that Ms. Lane is still alive and that he has
> paid her family money. Mr. Thompson can also acknowledge that there is an
> execution date scheduled but his psychotic mental illness prevents him from
> understanding that his execution is actually impending. Because Mr. Thompson does
> not believe, due to his delusional belief system, that it is possible for him to be
> executed he does not have the ability to meaningfully prepare himself for his own

25

death. As I reported on September 29, 2005 Mr. Thompson cannot rationally talk about or understand his own impending death.

[Court File No. 20].

On November 15, 2005, Dr. Sultan prepared a second supplemental report [Court File No. 27, Attachment A]. Dr. Sultan conducted another interview with Thompson on November 7, 2005, and she concluded Thompson's mental health continues to deteriorate and "[t]here remains a substantial change in his mental health." [Court File No. 27, Attachment A]. She briefly discussed his delusional beliefs and concluded Thompson did not possess the mental capacity to understand the impending execution and reason for it.

Thompson's supplemental submissions, which included reports from the prison, also contained information reflecting he was competent to be executed. For example, one report reflected that on July 18, 2005, Thompson told prison officials he was depressed because his "execution date is coming up and my sister died 2 years ago. I just found out." [Court File No.27, Attachment D].

The Supreme Court of Tennessee concluded Thompson failed to demonstrate a substantial change in his mental health since the previous determination of his competency that raises a substantial question about his present competency to be executed. The burden was on Thompson to show there had been a *substantial change* in his mental health since the previous determination of competency was made and the showing was sufficient to raise a substantial question about the prisoner's competency to be executed. *Van Tran v. State*, 6 S.W.3d at 272.

Thompson did not meet his burden. His initial filings included Dr. Sultan's affidavit wherein she concluded Thompson's psychiatric condition had deteriorated somewhat and that his delusional beliefs had expanded such that he believed his involvement with the murder of Brenda Lane was predestined. She also explained his delusional belief that prior to his execution his life might be

26

saved. Dr. Sultan's affidavit described Thompson's delusional beliefs but also reflected that Thompson was aware of his impending execution and the reason for it, which are the only two requirements for a finding of competency-to-be-executed under *Van Tran*. Dr. Sultan's supplemental affidavits discuss Thompson's delusions but still demonstrate Thompson is aware of his impending execution and the reason for it, *i.e.*, "Although Mr. Thompson will sometimes acknowledge his involvement in the murder of Brenda Lane, as he did on July 28, 2005, he simultaneously and irrationally believes that Ms. Lane is still alive and that he has paid her family money. Mr. Thompson can also acknowledge that there is an execution date scheduled but his psychotic mental illness prevents him from understanding that his execution is actually impending." [Court File No. 20]. Although Dr. Sultan has interpreted Thompson's delusions as preventing him from understanding that his execution is actually impending, she does not reconcile statements acknowledging his involvement with Brenda Lane's murder and the impending execution date with her conclusion that he is unaware of the punishment he is about to suffer and the reason for it.

In reviewing Thompson's challenge to the Tennessee Supreme Court no-substantial-change-decision, the Court is faced with the question of the appropriate standard of review. This uncertainty arises because section 2254(e)'s standard which provides that a state court's factual finding are presumed correct unless a petitioner offers *clear and convincing contrary evidence, see* § 2254(e)(1), may be a odds with section 2254(d)'s *unreasonable-determination-of-the-facts* standard for granting habeas corpus petitions. However, the Supreme Court recently suggested that the standards may merge when it explained, in *Miller-El v. Dretke*, 125 S.Ct. 2317, 2325 (2005), that under AEDPA a petitioner may only obtain relief by showing the state court's conclusion was based on upon an unreasonable determination of the facts. The Court further explained that it would presume the state

27

court factual findings were correct unless the petitioner rebutted the presumption with clear and convincing evidence. Nevertheless, even if the Supreme Court did not recognize the merger of the two standards and this Court bases its decision solely on the more lenient standard of § 2254(d)(2), the Court would reach the same conclusion: the State court's determination was not unreasonable.

Applying either standard, both standards, or just the more lenient reasonable standard to Thompson's claim the Court finds he is not entitled to habeas relief on this claim. Thompson has not presented clear and convincing evidence demonstrating that the State court determinations are incorrect, nor has he shown that Tennessee Supreme Court's decision was the result of an unreasonable determination of the facts. In the interest of caution, the Court will decide this claim applying the more lenient reasonable standard. Therefore, applying the reasonable standard, the state court decision in Thompson's case will be considered to be based upon an unreasonable determination of the facts only if it was objectively unreasonable to find that Thompson did not show there had been a substantial change in his mental health (that raised a substantial question about his present competency to be executed) since the previous determination of his competency. *See Rice v. Collins*, 126 S.Ct. 969 (2006) ("Under AEDPA, however, a federal habeas court must find the state-court conclusion "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Thus, a federal habeas court can only grant Collins' petition if it was unreasonable to credit the prosecutor's race-neutral explanations for the *Batson* challenge.").

Accordingly, based on the record before the state court, primarily Dr. Sultan's affidavits stating that Thompson acknowledges he murdered Brenda Lane and he received the death penalty because he committed that crime, the decision of the Tennessee Supreme Court concluding that

28

Thompson did not show that there had been a substantial change in his mental health since the previous determination of his competency, is not an unreasonable determination of the facts presented in state court. Dr. Sultan's affidavit demonstrates that Thompson is having more of the same kind of problems he had when Dr. Sultan found him incompetent in 2004. Dr. Sultan avers that Thompson *continues* to believe his execution is impossible [Court File No. 20, p.2, ¶ 8]. This shows that Thompson is continuing the delusions that the state court considered in Thompson's initial competency-to-be-executed petition. Dr. Sultan explains Thompson is experiencing more expansive thoughts and a greater number of delusional beliefs. Although the concept of "more" adds weight to the irrational thoughts and beliefs, it does not signal a change in whether he understands the fact of his execution or the reason for it. Dr. Sultan avers that since 1998 Thompson has believed it is impossible for him to be executed; consequently, this is not new information and does not constitute a substantial change in his mental health since the previous determination of his competency to be executed in 2004. Needless to say, this information does not raise a substantial question about his present competency to be executed.

A thorough review of the state court record reflects Thompson has not demonstrated that, under § 2254(d)(2), the state court's decision was based upon an unreasonable determination of the facts in light of the evidence before it. Accordingly, Thompson is not entitled to any habeas relief on his no-substantial-change claim.

### 6.    **Conclusion: Competency-To-Be-Executed Claim**

The evidence before this Court reflects Thompson suffers from a severe mental illness with psychotic features. In addition, the record indicates that although Thompson is mentally ill and expresses several delusional beliefs, including that his conviction will be reversed and that his gold

29

bars and Grammy Award will mitigate his death sentence, the expert reports reflect that Thompson knows he is sentenced to death for murdering Brenda Lane. In addition, his delusions acknowledge his criminal conviction and impending death sentence. "*Ford* does not require the state convicting court to ignore other evidence indicating that, despite his delusional beliefs, [a habeas petitioner] is aware that he is going to be executed for [] capital murder . . . in determining whether [the habeas petitioner] has made the threshold showing of a [genuine dispute] as to his competency to be executed." *Patterson v. Dretke*, 370 F.3d 480, 486 (5th Cir.), *cert. denied*, 541 U.S. 1058 (2004). The experts express doubt about Thompson's rational and factual understanding that he is to be executed. However, they do not address Thompson's acknowledgment that he is being executed for murdering Brenda Lane and the fact that his delusions that his *conviction* and *death sentence* will be reversed reflect his knowledge that he was convicted of murder and received a death sentence. Additionally, the experts do not reconcile the inconsistency between Thompson's acknowledgments and delusions of his impending death sentence for the murder of Brenda Lane with their opinion that Thompson may lack understanding that he is going to be executed and the reason why.

Thompson's delusions do not consist of a perception that he did not commit murder or that he did not receive the death sentence for the murder, but rather, his delusions pertain to circumstances he claims will result in him being awarded a new trial and sentencing hearing. Thompson's delusional beliefs do not bear on the question of whether he knows he is sentenced to be executed for committing a murder. Thompson's experts do not establish that he is unaware of the fact of or the reason for his impending execution, but rather, that his perception of himself and his perception of the future is at times distorted by a delusional system in which he believes he is a rich song writer who will receive a new trial because he was previously a lieutenant in the Navy.

30

For this Court to grant Thompson's application for a writ on this claim, it must find that the conclusions reached by the trial court and the Tennessee Supreme Court as to Thompson's failure to make a threshold showing that a genuine issue exists regarding his present competency to be executed, and the Tennessee Supreme Court's decision that Thompson failed to demonstrate a substantial change in his mental health since the previous determination of his competency, are objectively unreasonable or contrary to United State Supreme Court precedent or an unreasonable determination of the facts. This Court cannot reach such a conclusion.

Accordingly, Thompson is not entitled to habeas relief on his competency-to-be-executed claim. The conclusions by the state courts that Thompson failed to meet the threshold showing required under *Ford* and *Van Tran* to mandate a hearing and that Thompson failed to demonstrate a substantial change in his mental health since the initial determination of his competency, were not contrary to or an unreasonable application of federal law, nor an unreasonable determination of the facts. Although, the Court has adequately addressed Thompson's incompetent-to-be-executed claim, it will further address the specific sub-claims raised by Thompson, at least to the extent the Court is able to decipher those claims.

Thompson includes what appears to be three sub-claims within his incompetent-to-be-executed claim. The Court will now address these sub-claims. Although the claims Thompson attempts to assert in sub-claim I, II, and III are not clear, the Court construes them as claims attacking the application of the *Ford* procedures. Sub-claim I, The State Shall Not Execute The Insane, consists of the law and presumably a claim that Thompson is insane. Subsection II, Tennessee's Implementation of *Ford v. Wainwright*, attacks Tennessee's application of *Ford's* threshold showing as clearly wrong and unreasonable under controlling law [Court File No. 41, at 62]. Sub-claim III,

31

Tennessee's Implementation of *Ford v. Wainwright*, is an assertion that Tennessee's *Ford* proceedings as applied to Thompson failed to satisfy due process. The Court will now address these claims individually.

### a.     The States Shall Not Execute The Insane[11]

Although Thompson has not clearly stated an issue under this sub-claim, the Court construes this claim as an assertion by Thompson that he is insane. Thompson, relying upon *Ford v. Wainwright*, 477 U.S. 399 (1986), claims his execution is barred because he is insane. In *Ford* the Supreme Court of the United States ruled that the Eighth Amendment prohibits execution of a defendant who is insane. The Supreme Court did not define insanity in the majority opinion, but instead, left to the states "the task of developing appropriate ways to enforce the constitutional restriction upon its execution of sentences." *Id.* at 416. Following *Ford*, some states adopted statutory schemes to govern the determination of mental competency in death penalty cases. Tennessee, however, has not adopted a statutory definition of competency for use in death penalty cases. Instead, the Supreme Court of Tennessee adopted and set forth the procedure that a prisoner sentenced to death must follow in order to assert his constitutional rights to challenge his competency to be executed in *Van Tran v. State*, 6 S.W.3d 257 (Tenn. 1999). This procedure was followed in Thompson's case.

The Tennessee Supreme Court, agreeing with Justice Powell's opinion in *Ford* concluded "that in a proceeding to determine competency to be executed, only those who are unaware of the punishment they are about to suffer and the reason they are to suffer it are entitled to a reprieve." *Id.* at 266. As previously discussed in this opinion, Thompson has not demonstrated that his sanity

---

[11]     Insanity and incompetency have substantially the same meaning in this context.

32

raises a genuine issue or that he is insane. Consequently, Thompson's execution will not violate "[t]he central holding of *Ford* . . . that the Eighth Amendment prohibits a state from carrying out a sentence of death upon a prisoner who is insane," *Ford v,. Wainwright*, 477 U.S. at 409, because, as the Court has previously concluded in this memorandum opinion, Thompson has failed to demonstrate he is incompetent to be executed. Consequently, Thompson has not demonstrated that he is insane, thus his execution is not unconstitutional.

**b.    Tennessee's Implementation of *Ford v. Wainwright***

Next, Thompson claims Tennessee's application of *Ford's* "threshold showing" is clearly wrong and unreasonable under controlling law. With respect to the standard of review to be applied by this Court to Thompson's habeas petition, the Supreme Court has made clear that unreasonableness means more than erroneously or incorrectly. *Williams v. Taylor*, 529 U.S. 362, 411 (2000). Consequently, the portion of Thompson's claim asserting Tennessee's application of *Ford's* threshold showing is clearly wrong is not cognizable in this habeas proceeding.

In effect, Thompson is claiming he submitted evidence demonstrating a genuine question regarding his present competency, but the state courts "paid mere lip service to *Ford* and its own standards in *Van Tran* when it failed in Thompson's case to follow neither and, as a result denied Thompson a hearing." [Court File No. 41, at 63]. The Court of Appeals for the Sixth Circuit has previously approved the Tennessee Supreme Court's adoption of Justice Powell's standard for establishing the standard for competency to be executed and by placing the burden of proof on a prisoner to make a threshold showing of incompetence for a hearing. *Coe v. Bell*, 209 F.3d 815, 821 (6th Cir. 2000).

33

Initially, the Court observes that the placement of the burden of proof on Thompson to prove, by a preponderance of the evidence, that his competency is genuinely in dispute is not unconstitutional and is not an unreasonable application of Supreme Court precedent. *See Coe v. Bell*, 209 F.3d 815, 828 (6th Cir. 2000); *Van Tran v. State*, 6 S.W.3d 257 (Tenn. 1999). In *Ford*, Justice Powell observed that a petitioner does not make his competency-to-be-executed claim against a neutral background. Observing that "in order to have been convicted and sentenced, petitioner must have been judged competent to stand trial, or his competency must have been sufficiently clear as not to raise a serious question for the trial court[,]" Justice Powell concluded the State may presume the petitioner is sane and "may require a substantial threshold showing of insanity merely to trigger the hearing process." *Ford*, at 426. Accordingly, it appears that the standard to trigger a hearing and the standard for competency to be executed in Tennessee, as set out in *Van Tran*, meets constitutional muster. In Tennessee, a prisoner is not entitled to a hearing on the issue of competency unless he makes a threshold showing that a genuine, disputed issue exists regarding the prisoner's present competency. *Van Tran* at 268; *see also Coe*, 17 S.W.3d at 211. Thompson did not make such a showing, thus, he was not entitled to a hearing in state court.

As explained above, the state court's decision that Thompson failed to make a threshold showing that his competency to be executed presented a genuine dispute is neither an unreasonable determination of the facts nor contrary to, or an unreasonable application of Supreme Court precedent. Consequently, the threshold showing standard applied by the Tennessee courts in the instant case was neither clearly wrong nor unreasonable under controlling law. Accordingly, the state court application of *Ford's* "threshold showing" is neither contrary to, nor an unreasonable application of Supreme Court precedent.

34

### c.    Tennessee's *Ford* Proceedings Failed to Satisfy Due Process

In his last sub-claim, Thompson contends the state court proceedings failed to satisfy due process as required by *Ford*. The procedure identified by the Tennessee Supreme Court in *Van Tran* requires a prisoner to raise the issue of competency to be executed in the Tennessee Supreme Court when filing a written response to the motion of the state attorney general to set an execution date. The prisoner has ten days from the filing of the motion of the Tennessee Attorney General to file a response and raise the issue of competency to be executed.    Once the motion is granted and execution date scheduled, the competency-to-be-executed issue is ripe and the Tennessee Supreme Court remands the issue of competency to be executed to the trial court where the prisoner was originally tried and sentenced for a determination of the issue. *Id.* at 267.

The trial court determines whether a hearing is warranted; and this decision depends on whether the prisoner has made the required threshold showing that his competency to be executed is genuinely at issue. *Id.* at 268. The Tennessee procedure places the burden on the prisoner to make a threshold showing that he is presently incompetent.    To meet this burden, the prisoner may submit affidavits, depositions, medical reports, or other credible evidence sufficient to demonstrate that there exists genuine questions regarding the prisoner's present competency. The *Van Tran* Court emphasized "that the proof required to meet the threshold showing must relate to *present* incompetency." *Id.* at 269.   The *Van Tran* Court also noted that "unsupported conclusory assertions of a family member of the prisoner or an attorney representing the prisoner will ordinarily be insufficient to satisfy the required threshold showing." *Id.* If the trial court is satisfied there exists a genuine dispute regarding the prisoner's present competency, then a hearing will be held.

35

The Sixth Circuit has previously approved the Tennessee procedures used to dispose of a *Ford* claim.

> Given Justice Powell's opinion in *Ford*, we believe that '[a]s long as basic fairness is observed' in a prisoner's competency-to-be-executed determination, a state has 'substantial leeway to determine what process best balances the various interests at stake.' *Ford,* 477 U.S. at 427 . . . (Powell, J., concurring). Accordingly, we must give the Tennessee courts substantial discretion in fashioning the procedures employed in . . . competency proceedings.

*Coe,* 209 F.3d at 828. The *Coe* court determined the Tennessee state court's proceedings assessing Coe's *Ford* claims satisfied the requirements of due process.[12] The Sixth Circuit specifically concluded "the Tennessee Supreme Court properly followed the narrow concurring opinion of Justice Powell in establishing the standard for competency to be executed . . . ." *Id.* at 821.

Thompson equates his mental illness to being incompetent to be executed. However, a person can suffer from mental illness and still be competent to be executed. *See Walton v. Johnson,* 440 F.3d 160, 174 n.15 (4th Cir. 2006) ("As both Drs. Pandurangi and Mills stated, whether an inmate is mentally ill is a different concept from whether an inmate is mentally incompetent to be executed."); *Coe v. Bell,* 89 F.Supp. 2d 922, 931 (M.D. Tenn. 2000) ("Dr. Kenner further stated that you could have a mental illness and still be competent to be executed."); *White v. Horn,* 54 F.Supp.2d 457, 468 (E.D. Pa. 1999) ("The court also appropriately gave weight to Dr. Sadoff's testimony that . . . Mr. Heidnik is not psychotic, and that his paranoid schizophrenia, including unrelated delusions, does not mean he is incompetent."); *Barnard v. Collins,* 13 F.3d 871, (5thCir. 1994) ("Dr. Edward B. Gripon, . . . testified that although Barnard suffered serious delusions,

---

[12]     The trial court determined *Coe* was entitled to a hearing because he had satisfied a threshold showing that there existed a genuine disputed issue regarding his competency to be executed.

36

Barnard understood the fact of his impending execution and the reason."); and *Garrett v. Collins*, 951 F.2d 57, 59 (5thCir. 1992) ("[W]e are persuaded that this belief or hope[that his dead aunt will protect him from the effects of the sedative and toxic agents used to execute him] Garrett holds does not prevent the state from executing him under the *Ford v. Wainwright* standard.").

Thompson's claim, that the uncontradicted evidence of his mental illness, in effect, mandates that he be provided an evidentiary hearing on his competency, is flawed because a person who is mentally ill can still be competent. In Thompson's case, Tennessee's implementation of the *Ford v. Wainwright* and *Van Tran v. State* procedures satisfied due process and did not violate the Eighth and Fourteenth Amendment to the United States Constitution. In addition, the "cognitive test" adopted in *Van Tran,* "that under Tennessee law a prisoner is not competent to be executed if the prisoner lacks the mental capacity to *understand* the fact of the impending execution and the reason for it"[13] was properly applied to Thompson. The Supreme Court of Tennessee concluded "[t]he reports of Thompson's mental health experts show that, despite any delusions, Thompson *understands* that he is going to be executed for murdering Brenda Lane." *Thompson v. State*, 134 S.W.3d 168, 183 (Tenn. 2004) (emphasis added).

Tennessee provided Thompson with the basic fairness that *Ford* requires; namely, the opportunity to be heard. Thompson availed himself of that opportunity when he submitted reports from his experts and his medical records. The fact that Tennessee denied Thompson an evidentiary hearing does not violate due process as explained in *Ford.* Thompson's experts did not demonstrate that Thompson is unable to understand he is sentenced to death and why the death sentence was

---

[13]     *Van Tran v. State*, 6 S.W.3d at 266 (emphasis added).

imposed upon him. Therefore, the trial court was justified in finding that Thompson had failed to present sufficient evidence to meet the threshold showing sufficient to warrant a hearing.

In addition to the instant broad due process claim contained in his third sub-claim, Thompson also included, within his third sub-claim, six specific alleged deficiencies that he contends demonstrates the Tennessee courts ventured so far afield of *Ford* that they failed to satisfy the due process as required by *Ford*. Thompson claims the following six deficiencies in the state court process demonstrate the Tennessee courts denied him due process.

### (1)    The Tennessee Supreme Court
### Failed to Consider Relevant Evidence

Thompson maintains that contrary to *Ford* the Tennessee Supreme Court failed to consider relevant evidence. *Ford* provides that the "adversary presentation of relevant information be as unrestricted as possible." *Ford v. Wainwright*, 477 U.S. at 417. The Tennessee Supreme Court in *Van Tran* emphasized "that the proof required to meet the threshold showing must relate to *present* incompetency. Therefore, by definition, at least some of the evidence submitted must be the result of recent mental evaluations or observations of the prisoner." *Van Tran v. State*, 6 S.W.3d at 269 (emphasis in original). The *Van Tran* court also concluded that if the only evidence offered relates to the prisoner's distant past competency or incompetency, the threshold showing will not be made. In addition, the court noted that "unsupported conclusory assertions . . . of an attorney representing the prisoner will ordinarily be insufficient to satisfy the required showing." *Id.*

Thompson contends "the Tennessee Supreme Court's opinion focused almost exclusively on a laundry list of evidence which it declared would categorically not be considered in its 'threshold' inquiry and focused on few facts which it deemed unfavorable to a determination of insanity." [Court File No. 41, at 68]. Thompson complains the Tennessee Court failed to consider

38

evidence of Thompson's past incompetency, unsupported conclusory allegations that Thompson is mentally ill, Thompson's "unusual views about what occurs after" the execution, and his "delusional and unorthodox beliefs." [Court File No. 41, at 68]. Thompson is simply incorrect in his contention that the Tennessee Supreme Court failed to consider relevant evidence.

The Tennessee Supreme Court conducted a *de novo* review. The state court considered the eighteen exhibits attached to Thompson's petition.[14]  In compliance with the dictates of *Van Tran*,[15] the state supreme court determined Thompson's stale history of mental illness was not relevant to the issue of *present* competency. Nevertheless, the state court did  review the prison records relating to Thompson's mental health history and concluded they illustrated Thompson remains aware he has been sentenced to death for the murder of Brenda Lane.

Contrary to Thompson's assertion that the Tennessee Supreme Court failed to consider relevant evidence, all evidence submitted by Thompson in support of his petition was considered by the Tennessee Supreme Court during their *de novo* review.  The court identified and discussed the evidence presented by Thompson.  Considering all the evidence submitted by Thompson, the Tennessee Supreme Court, observing that a prisoner who suffers from a mental disease or disorder does not automatically equate to a finding of incompetency to be executed, concluded the reports of the mental health experts demonstrated that, despite any delusions, Thompson understands he is

_____

[14]     The exhibits consisted "of records detailing Thompson's history of mental illness while in custody of the Tennessee Department of Corrections for the murder of Brenda Lane; materials regarding the appointment and later termination of a conservator to supervise Thompson's medication; affidavits from Thompson's attorney and investigator in the federal proceedings; and the reports and curricula vitae of three mental health professionals, who have examined Thompson within the last three months and opine that he is incompetent to be executed." *Thompson v. State*, 134 S.W.3d at 178.

[15]     6 S.W.3d at 269.

going to be executed for murdering Brenda Lane. Accordingly, Thompson's claim that the Tennessee Supreme Court failed to consider relevant evidence is without merit. The Court now turns to the second of the six deficiencies alleged by Thompson – that the state courts refused to consider whether he could meaningfully prepare for death.

## (2)    Refusal to Consider Thompson's Ability to Prepare for Death

Thompson challenges Tennessee's failure to consider whether an inmate can meaningfully prepare for his death. Thompson proposes that competency for execution requires that a condemned inmate have the capacity to prepare himself for his death.

*Ford* mandates no such requirement. In *Ford*, Justice Powell observed in dicta that "only if the defendant is aware that his death is approaching can he prepare himself for his passing." The dicta in Justice Powell's opinion is not part of the test to determine whether a death row inmate is competent to be executed. Read in context, it is clear that Justice Powell did not include this as a required element of his test. In fact, Justice Powell made his two-part test explicitly clear. Justice Powell clearly stated, "I would *hold* that the Eighth Amendment forbids the execution *only* of those who are unaware of the punishment they are about to suffer and why they are to suffer it." *Ford*, 477 U.S. at 422 (emphasis added). Consequently, the Eighth Amendment does not require that an inmate have the capacity to prepare for his passing to be deemed competent to be executed.

Accordingly, the Tennessee courts failure to consider whether Thompson could meaningfully prepare for his death was neither contrary to nor an unreasonable application of Supreme Court jurisprudence. This issue is without merit.

40

### (3)    Unreasonable Application of
### Presumption of Competency

Thompson asserts the state court's automatic application of a presumption of competency was unconstitutional because Thompson has a history of mental illness. The district court first observes that mental illness does not necessarily equate to incompetency. Consequently, the fact that Thompson suffers from mental illness does not prohibit the state courts from presuming he was competent.

Thompson has been involved in court proceedings since 1985, and there is no evidence before this Court indicating that, during the past twenty plus years of criminal proceedings, he has ever been declared incompetent. Although Thompson has made his mental condition an issue since he was arrested for the murder of Brenda Lane in 1985, there is nothing in the record reflecting Thompson has ever been found incompetent. Prior to trial, at defense counsel's request, Thompson was committed for a thirty-day mental evaluation at Middle Tennessee Mental Health Institute, after which he was found to be competent to stand trial, sane at the time of the offense, and not committable. *State v. Thompson*, 768 S.W.2d 239, 248 (Tenn. 1989). Thompson presented testimony of a clinical psychologist at the sentencing phase of his murder trial and during post-conviction proceedings he challenged the performance of trial counsel for failing to investigate fully certain head injuries and "mental problems." However, there is no evidence that Thompson has ever been legally adjudged incompetent. Additionally, the records from the conservatorship proceedings do not reflect those proceedings involved a finding of incompetency. Consequently, Thompson has not demonstrated that the state court unreasonably applied a presumption of competency.

Applying the *Ford* and *Van Tran* procedures, the Tennessee Supreme Court observed that a prisoner is presumed competent in these proceedings because the prisoner is asserting competency

41

"following a trial and sentencing hearing at which his sanity was either conceded or determined by the court." *Thompson v. State*, 134 S.W. 3d at 176. Consequently, Thompson has failed to provide any evidence that the state court's application of the presumption of competency to Thompson was unreasonable or unconstitutional. Accordingly, Thompson is not entitled to any habeas relief on this claim.

### (4) Denial of Hearing Based on Incorrect Standard

Thompson asserts the Tennessee Supreme Court required him to conclusively prove insanity before granting a hearing instead of applying the "threshold showing" standard. This allegation is simply incorrect.

Thompson claims the Tennessee Supreme Court's reliance upon the four factors in Dr. Rabun's report which suggested Thompson retains the capacity to be executed, to the exclusion of the eight factors which suggested Thompson lacks the capacity to be executed, was unreasonable.

Dr. Rabun's report included his subjective interpretation of Thompson's delusions. However, the delusions Dr. Rabun relied upon to support his interpretation that Thompson's delusions suggest Thompson lacks the capacity to be executed, are delusions that, in and of themselves, acknowledge Thompson knows that he is sentenced to death for committing a crime. One of Thompson's delusions is his belief that counsel should retrieve his buried gold bars, one million dollars, Grammy Award, and two stock certificates to use as a "mitigator." Thompson also stated he was a lieutenant in the Navy and as such, his first trial included an incorrect jury, thus, rendering his first trial invalid. Thompson believes the buried evidence should be given to the Secretary of the Navy to help with mitigation at the new trial to which he believes he is entitled.

42

According to Dr. Rabun, Thompson "holds magical, near child-like reasoning about possible avenues of appeal in the present case." [Addendum No. 6, Exhibit 8, at 12-13].

Dr. Rabun's report reflects that although Thompson "knows his sentence is death, he does not appreciate that the State of Tennessee can legally execute him." Dr. Rabun bases this conclusion on Thompson's delusion that if his attorney will retrieve the buried evidence it can be used to help with mitigation at the new trial to which he believes he is entitled [Addendum No. 6, Exhibit 8, at 13]. In addition, Thompson told the examiner his preferred method of execution is the electric chair because he is used to being shocked. Thompson claimed he is shocked when he touches his TV and it felt like a shock when the chiropractor twisted his neck. Dr. Rabun interpreted this statement to suggest that Thompson lacks the capacity to appreciate the finality of the execution process due to his mental disease because he compares lethal electrocution to common static electricity or a chiropractic procedure. Nevertheless, regardless of Dr. Rabun's subjective interpretation of Thompson's comments, the evidence in the record supports the state court findings that Thompson knows he is sentenced to death for the killing of Brenda Lane.

Although the Tennessee Supreme Court stated that unsupported conclusory assertions will be insufficient to satisfy the required threshold showing to justify a hearing, as will allegations that the prisoner is mentally ill and possesses unusual views about what occurs after the prisoner's execution, the Court *did not* require Thompson to conclusively prove insanity. *Thompson v. State*, 134 S.W.3d at 177. To the contrary, the state court concluded that "[w]hile Thompson's petition and supporting exhibits establish that he is mentally ill, these filings do not raise a genuine issue regarding Thompson's competency." *Id.* at 183. The Tennessee Supreme Court, observed that "[u]nless the prisoner submits materials that raise genuine disputed issues about the prisoner's

43

mental capacity to understand or be aware of the fact of the impending execution and the reason for it, the threshold showing has not been met[,]." That court thereby applied the proper governing standards articulated in *Ford* and *Van Tran,* and concluded Thompson failed to establish a genuine issue regarding his competency because "[t]he reports of Thompson's mental health experts show that, despite any delusions, Thompson understands that he is going to be executed for murdering Brenda Lane." *Thompson v. State*, 134 S.W.3d at 183.

The Tennessee Supreme Court did not require Thompson to conclusively prove insanity before granting a hearing, but instead reasonably applied the "threshold showing" standard which Thompson failed to meet. Accordingly, Thompson's claim that the Tennessee Supreme Court required him to conclusively prove insanity before granting a hearing is simply incorrect and without merit. This claim does not entitle Thompson to habeas relief and it will be **DISMISSED**.

### (5)     **Tennessee Supreme Court's Inadequate Review**

Thompson asserts that, contrary to the due process teachings of *Ford*, the Tennessee Supreme Court reviewed and issued a wholesale affirmance of the lower court's decision, which, not only was entered by a disqualified jurist, but adopted in whole the state's position without providing a neutral review of the evidence [Court File No. 41, at 87]. The court will address Thompson's claim that the judge was disqualified separately and prior to addressing his claim that the Tennessee Supreme Court's review was inadequate.

#### (a)     **Disqualified Jurist**

Thompson contends his "right to due process of law was violated when the original trial judge, who recused himself from this case because of 'compelling circumstances,' subsequently presided over the competency proceedings and entered the order denying Thompson a competency

44

hearing." [Court File No. 41, at 8]. The Tennessee Supreme Court addressed this issue. Therefore, to grant Thompson relief on this claim, this Court must conclude that the state court decision was based on an unreasonable determination of the facts or that the decision was contrary to, or an unreasonable application of Supreme Court precedent. Some history surrounding the trial court judge's role in Thompson's prior proceedings will be helpful in understanding this claim.

The trial court judge, Judge Gerald Ewell, was the presiding judge during Thompson's criminal murder trial. At Thompson's trial and in the Rule 12 Report,[16] Judge Ewell commended defense counsel's performance. Thompson filed a successful motion to disqualify Judge Ewell from presiding over his state post-conviction proceedings on the basis that Judge Ewell's earlier remarks showed that he had "prejudged" the issue of ineffective assistance of counsel. *Thompson v. State*, 134 S.W.3d at 174 n. 4. According to Thompson, he failed to challenge Judge Ewell's qualification in the trial court when pursuing his competency-to-be-executed claim because he had no formal notice that Judge Ewell had been assigned this case until entry of the order which is the subject of this habeas petition. *Id.*

Upon appeal of Judge Ewell's order denying him relief on his competency-to-be-executed claim, Thompson claimed the order was void because Judge Ewell recused himself from Thompson's post-conviction case. The Tennessee Supreme Court reasoned "this competency proceeding is an independent action involving a discrete issue, not a continuation of any prior

---

[16]     Tennessee Supreme Court Rule 12 requires the trial judge to complete a report in all cases in which a defendant is convicted of first-degree murder. The report is transmitted to the Clerk of the Tennessee Supreme Court within fifteen (15) days after the trial court rules on a motion for new trial. A portion of the report is prepared by the district attorney general and a portion is prepared by the defense attorney. Counsel submits the report with the completed sections to the trial judge. The trial judge completes the court's portion of the report and counsel review the completed report for accuracy and further comments before it is transmitted to the Tennessee Supreme Court.

proceedings." *Id.* at 173, *citing Van Tran*, 6 S.W.3d at 264 (holding that post-conviction is not the appropriate avenue for litigating the issue of competency to be executed). The state court concluded that:

[A] claim of ineffective assistance of counsel, the basis for Judge Ewell's recusal in the post-conviction case, does not arise in this competency proceeding. In short, Judge Ewell's recusal in the post-conviction case does not disqualify him from presiding in other separate and independent proceedings involving Thompson, including this competency proceeding.

This Court agrees this competency proceeding is an independent action and not a continuation of any prior proceeding. This second proceeding does not involve the same principals, witnesses, or claims as those involved in Thompson's initial post-conviction case. The basis for the judge's first recusal was that he had earlier made remarks that indicated he had prejudged the issue of ineffective assistance of counsel. This case is a separate case from Thompson's initial state post-conviction petition. This case does not challenge his criminal conviction, sentence, or trial counsel's effectiveness. The issues in the instant case are solely related to Thompson's present competency to be executed. Moreover, there is neither a claim of any bias by the trial judge nor evidence of bias in the record. Furthermore, this case is not a continuation of any prior proceeding but rather, is an entirely different case from the case in which Judge Ewell recused himself. Thompson's main challenge is based on the argument that having Judge Ewell preside over these proceedings created an appearance of impropriety and not an appearance of justice. Thompson wants the nullification of Judge Ewell's decision finding that Thompson failed to meet the threshold requirement to proceed with his competency-to-be-executed claim, even though the Tennessee Supreme Court performed a *de novo* review.

[M]ost questions concerning a judge's qualifications to hear a case are not constitutional ones, because the Due Process Clause of the Fourteenth Amendment

46

establishes a constitutional floor, not a uniform standard. Instead, these questions are, in most cases, answered by common law, statute, or the professional standards of the bench and bar. But the floor established by the Due Process Clause clearly requires a 'fair trial in a fair tribunal,' before a judge with no actual bias against the defendant or interest in the outcome of his particular case.

*Bracy v. Gramley*, 520 U.S. 899, 904-05 (1997) (citations omitted).

In the absence of actual bias or actual impropriety, no constitutional violation occurred. *See Falconer v. Meehan*, 804 F.2d 72, 78 (7thCir. 1986) (Applying the federal disqualification statute, 28 U.S.C. § 455, the court concluded that judicial acts taken prior to the filing of the 455 motion would not later be set aside unless actual impropriety or actual prejudice was demonstrated; "appearance of impropriety is not enough to poison prior acts"). Indeed, an appearance of impropriety does not support an inference of bias. *See Del Vecchio v. Illinois Dept. of* Corrections, 31 F.3d 1363, 1371 (1994) (A judge's mere appearance of impropriety does not render a judgment in violation of due process.).

Thompson has not demonstrated any actual impropriety or actual bias on Judge Ewell's part. Judge Ewell's recusal in Thompson's original post-conviction proceeding was based on his predetermination that trial counsel represented Thompson "as vigorously and competently as if there were being paid a million dollars." The previous recusal was not related in any way to Thompson's claim that he is presently incompetent to be executed. Thompson has failed to direct the Court's attention to any Supreme Court precedent which requires habeas relief on this sub-claim.

Accordingly, since Thompson has neither demonstrated that the factual determination of the state court is unreasonable nor that the state court decision was contrary to or an unreasonable application of federal law, he is not entitled to habeas relief on this claim. The Court will now turn to the second claim raised under this sub-claim.

47

### (b) Denial of Neutral and Independent Adjudication of Facts and Law

Thompson asserts the Tennessee Supreme Court acted contrary to established law when it sanctioned the trial court's adoption of the State's responsive pleading into its order and provided no independent evaluation or analysis of its own. Thompson bases his claim that he was denied a neutral and independent adjudication of his case primarily upon the statement in the trial court's order that "[i]n this case many of the assertions made by the State in response to said petition came to the mind of the undersigned while reading the petition, and the State's response generally enunciates the opinion and findings of this Court." [Addendum 8, at 2]. Thompson's claim that "the state court's order did not reliably and fairly resolve the disputed issues and did not reflect independent judicial judgment because the court simply adopted the state's response" is incorrect. The state court noted that while reading the petition the court reached the same conclusions as those advanced by the State in its response. This observation and the Tennessee Supreme Court's ultimate adverse ruling to Thompson's petition provides no basis for his allegation that the state court's judgment is based on a lack of independent judicial judgment.

The trial court's judgment reflects that the court concluded that the reports submitted by the three experts clearly demonstrate Thompson is presently aware that he is under a death sentence for the murder of Brenda Lane. In addition, the Tennessee Supreme Court conducted a *de novo* review, and such review would have cured any inadequate review by the trial court.

The Tennessee Supreme Court ultimately determined that since the trial court concluded Thompson's written submissions failed to meet the threshold showing required for a hearing, findings of facts were not necessary. Furthermore, the Tennessee Supreme Court reviewed

48

Thompson's case *de novo* with no presumption of correctness afforded to the trial court's determination. However the court specified that its "conclusion that *de novo* review is the appropriate standard should not be viewed as an acceptance of Thompson's assertion that the trial court's order 'does not reflect independent judicial judgment.'" *Thompson v. State*, 134 S.W.3d at 178 n. 9.

Accordingly, Thompson has failed to demonstrate that the state court decision was the result of an unreasonable determination of the facts or was contrary to, or an unreasonable application of Supreme Court precedent. This claim will be **DISMISSED**.

### (6) Denial of Opportunity to Offer Relevant Evidence

Thompson claims he was denied access to information in the State's possession relevant to his mental state. First, Thompson complains the Tennessee Attorney General's Office obtained recordings of his telephone calls since January 2004, but both the State Attorney General's Office and the Warden of Riverbend Maximum Security Institution invoked a confidentiality provision of Tennessee's Public Records Act and refused to supply those same recordings to Thompson's counsel, thus, denying Thompson equal access to these records and violating his federal due process rights. Second, Thompson asserts there are other records to which the State has access but to which he is denied access.

This Court granted Thompson's motion for discovery to the extent that the State was ordered to provide said telephone records to Thompson. In addition, the State was ordered to provide records from the internal affairs investigation into Thompson's mental health. Although Thompson has notified the Court that he received said telephone records, petitioner has not demonstrated, nor even alleged, that the records contain material relevant evidence. In addition, the State maintains there

49

are no records of the internal affairs investigation into Thompson's mental health because no such investigation ever occurred.

Errors in the application of state evidentiary rulings generally are not cognizable in federal habeas proceedings unless they "offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996); *also see Estelle v. McQuire*, 502 U.S. 62, 69-70 (1991). There is nothing in the record demonstrating the requested evidence is material, thus, this claim is not cognizable in this habeas proceeding because there is no showing of a violation of due process. Accordingly, the alleged state evidentiary law error does not rise to the level of a federal constitutional claim and thus, warrants no relief in this habeas action since there has been no showing that the error rendered the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment. *Estelle v. McGruire,* 502 U.S. 62, 69-70 (1991). Accordingly, Thompson is not entitled to habeas relief on this claim.

**B.     Unconstitutional to Execute Mentally Ill Persons Whose Illness Results in Mental Deficiencies Which Diminish Culpability**

Thompson's second claim is that his severe mental illness significantly reduces his ability to control his conduct and reduces his moral culpability, thus, placing him outside that class of defendants to whom the death penalty may be constitutionally applied. A claim addressing his moral culpability and his inability to control his conduct is a claim that is, in effect, challenging his conviction which should have been raised in his original habeas petition. The Court is not addressing Thompson's moral culpability or his inability to control his actions but instead is addressing his competency-to-be-executed. The Court lacks jurisdiction to address Thompson's

50

claims regarding his moral culpability or inability to control his actions because these claims constitute a second or successive habeas application under § 2244(b)(2). Thompson must first obtain authorization from the United States Court of Appeals for the Sixth Circuit before this district court can consider a second or successive application for habeas relief. Assuming for the sake of discussion that this claim was not barred as a successive habeas application, Thompson still would not be entitled to any habeas relief because the claim is procedurally defaulted.

### 1.    **Procedural Default**

Section 2254(b) limits a federal court's jurisdiction to hear a habeas claim to those cases in which a petitioner has exhausted all available state court remedies. To exhaust these state remedies, the petitioner must have presented to the state courts both the legal basis of the claim for which he seeks habeas relief and the factual basis of the claim. *Gray*, 518 U.S. at 162-63 (stating that the exhaustion requirement is not satisfied "by presenting the state courts only with the facts necessary to state a claim for relief"); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971); *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994). The factual allegations made in federal court must be the same factual allegations made in state court, and the substance of a federal habeas claim presented to the federal court must first be presented to the state court. *Picard*, 404 U.S. at 276.

When a petitioner raises different factual issues under the same legal theory, he is required to present each factual claim to the highest state court in order to exhaust his state remedies. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 (1999). A petitioner has not exhausted his state remedies if he has merely presented a particular legal theory to the courts without presenting each factual claim. *Pillette v. Foltz*, 824 F.2d 494, 497-98 (6th Cir. 1987). Moreover, each factual claim must be presented to the state courts as a matter of specific federal law. *Anderson v. Harless*, 459

51

U.S. 4, 6 (1982) ("It is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made"); *Gray*, 518 U.S. at 163 ("It is not enough to make a general appeal to a constitutional guarantee as broad as due process to present the 'substance' of such a claim to a state court"); *Duncan v. Henry*, 513 U.S. 364, 366 (1995) ("If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court").

If the state court decides those claims on an adequate and independent state ground, such as a procedural rule prohibiting the state court from reaching the merits of the constitutional claim, the petitioner is barred by this procedural default from seeking federal habeas review, unless he can show cause and prejudice for that default. *Edwards v. Carpenter*, 529 U.S. 446 (2000); *Teague v. Lane*, 489 U.S. 288, 297-99 (1989); *Wainwright v. Sykes*, 433 U.S. 72, 87-88 (1977). Cause for a procedural default depends on some "objective factor external to the defense" that interfered with the petitioner's efforts to comply with the procedural rule. *Coleman v. Thompson*, 501 U.S. 722, 752-53 (1991); *Murray v. Carrier*, 477 U.S. 478, 488 (1986).

Although Thompson asserts that he presented this claim to the state court in 2004 and 2005, and the Court decided the claim in 2004 but did not address it in 2005, Thompson fails to explain what the state court concluded in 2004, and this Court has been unable to locate the state court's decision on this claim. It does not appear that this issue was addressed by the state courts as it was not presented to the state court in the 2004 proceedings. The scattered record references Thompson cites, in an effort to demonstrate exhaustion, relate to his request for a certificate of commutation in connection with his initial opposition to the setting of an execution date in February 2004, his

52

subsequent motion to stay based on a change in his mental health status in October 2005, and unrelated issues in the Tennessee Supreme Court's 2004 opinion [Court File No. 41, at 102]. The Court does find this claim was properly raised in the subsequent motion to stay based on a change in his mental health status in October of 2005. Because Thompson failed to make an evidentiary showing sufficient to warrant consideration of a subsequent *Ford* claim, no additional legal claims were properly before the state court.

However, even assuming *arguendo*, that the claim is not barred for the reasons discussed above, the claim is time-barred under § 2244 (d)(1)(A) because it was raised in this habeas court more than one year from the date on which the state-court judgment at issue in this matter became final and it does not relate back to the original habeas corpus petition filed in this matter. Fed. R. Civ. P. 15(c). Thompson's initial petition raised the claim of whether the state court's decision that Thompson failed to meet the "threshold showing" to warrant an evidentiary hearing, which in effect held Thompson was competent to be executed. However, in this claim, Thompson is seeking to carve out a new category of the mentally ill for whom the death penalty is impermissible. Consequently, this claim does not relate back to his original habeas petition and is time-barred.

Accordingly, Thompson is not entitled to habeas relief on this claim because it constitutes a second or successive petition, it is procedurally defaulted, and time-barred, thus requiring its **DISMISSAL**.

## C.    <u>Executing the Chemically Competent is Unconstitutional</u>

In his third claim, Thompson claims any appearance of competency he may have is nothing more than an artificial, chemically-created competence. He further claims that not only is it "savage and inhuman" to forcibly medicate a person into competency for the purpose of execution, but that

53

it is also unconstitutional. The State maintains Thompson has procedurally defaulted this claim and, in the alternative, the State maintains it is untimely. The Court agrees that the claim has been defaulted and is untimely, but also finds that it is does not state a claim.

**1.      Procedural Default**

As noted, a procedural default occurs when a petitioner, who cannot show cause and prejudice, fails to fairly present his claim to the state courts before offering it as a federal constitutional violation in a habeas proceeding. *Murray v. Carrier,* 477 U.S. 478, 484 (1986). Thompson does not raise here the claim he raised in his state-court competency proceedings. Contrary to Thompson's assertion, the state-court record clearly demonstrates Thompson's default.

During his initial challenge to his competency to be executed in state court, Thompson recited his history of mental illness, including his regimen of medications, but he did not raise the fact that the antipsychotic medications were being administered or the surrounding circumstances as a federal constitutional matter. He did offer the claim to the state court in his "Notice of Change in Mental Health Status." But this was not a proper avenue for raising such a claim. This is so because the sole purpose of the Notice was to allow Thompson to provide proof demonstrating his mental health had substantially changed since the previous determination of competency was made. *Van Tran*, 6 S.W.3d at 272.

Not surprisingly, the Tennessee Supreme Court did not address the claim when disposing of Thompson's Notice of Change in Mental Health, as it was not properly before that Court. Thompson should have raised this claim in his initial petition challenging his competency to be executed, and not in his Notice. Consequently, Thompson failed to fairly present this claim in his state competency proceedings. *See Castille v. Peoples,* 489 U.S. 346, 351 (1989) ("fair presentation" requirement not

54

satisfied where a claim is offered to state courts in a procedurally inappropriate manner which renders consideration on its merits unlikely). Petitioner's failure to fairly present this claim in a procedurally appropriate manner in the state courts has resulted in a procedural default, for which no cause and prejudice has been shown, much less alleged. Absent such a showing, the claim cannot be entertained in this habeas proceeding.

However, even if the claim were not procedurally defaulted, there are two reasons why Thompson would not be entitled to habeas relief. First of all, his claim is time-barred under 28 U.S.C. § 2244. Secondly, Thompson has failed to state a constitutional claim.

### 2. <u>Timeliness of Claim</u>

Under 28 U.S.C. § 2244(d)(1)(A), a petitioner is afforded one year from the date on which the state court judgment becomes final, by the conclusion of direct review or the expiration of the time for seeking such review, within which to raise his constitutional challenges to that judgment in federal habeas proceedings. The Tennessee Supreme Court entered its judgment on Thompson's initial competency-to-be-executed petition on May 12, 2004. The ninety-day period during which Thompson could have sought certiorari review of the decision in the United States Supreme Court expired on August 12, 2004, at which point the state-court judgment would have become final. Thus, Thompson had until August 12, 2005, to raise his chemical-competency claim. Thompson filed his initial petition in this case on June 14, 2004, but did not include any such a claim. Thompson raised the claim in this district court in his amended petition on March 17, 2006 [Court File No. 41]. Though a later-raised claim is itself considered timely if it merely amplifies a claim raised in a timely petition, Thompson's chemical-competency claim rests upon a totally different legal theory and factual basis than did his competency-to-be-executed claim. *See Miller v. American*

55

*Heavy Lift Shipping*, 231 F.3d 242, 249 (6th Cir. 2000) (citing Moore's Federal Practice § 15.19.[2], at 15-82 (3rd ed. 1999) ("Amendments that amplify or restate the original pleading or set forth facts with greater specificity should relate back."). Therefore, since the chemical-competency claim does not "relate back" to the original habeas petition, *see* Fed. R. Civ. P 15(c), it is barred under § 2244 because Thompson raised it more than one year from the date on which the relevant state-court judgment became final.

### 3. Failure to State a Claim

Thompson alleges that he is taking his medications involuntarily. His argument is this. Thompson's current regimen of medications, initially, were involuntarily administered. Thereafter, a conservator, who was appointed pursuant to the state's request, ordered that Thompson be given the medications. The conservatorship was terminated at the request of Thompson's counsel and, though Thompson has attempted to stop taking the medications, he has been unsuccessful because of the addictive nature of the medications and the effects of withdrawal. Additionally, in his unmedicated state, Thompson has been subject to physical abuse by prison guards and reasonably fears for his safety if he were to discontinue his medication. Therefore, according to Thompson, his ingestion of the medicine is not voluntary [Court File No. 41, at 107-08 (citations to record omitted)].

Though Thompson does allege that his addition stems from past state action, it is significant that he does not allege that, at the present time, state authorities are compelling him to take the medications.[17] Even if Thompson's addiction compels him to take antipsychotic medications and

---

[17]    Indeed, he only claims the State forcibly medicated him in 1995, 1999, and 2000 – six to ten years ago.

even if his addiction, in fact, resulted from being forced to take the medications, none of this states a claim. This is so because taking medications under the compulsion of an addiction does not violate constitutional guarantees.

Moreover, even if Thompson had demonstrated that the state authorities were actually forcing him to take the medications, he has not shown that executing him in his medicated state is unconstitutional. An individual has a liberty interest in "avoiding the unwanted administration of antipsychotic drugs under the Due Process Clause of the Fourteenth Amendment." *Washington v. Harper*, 494 U.S. 210, 221-22 (1990). Yet, when a person is confined in a state institution, individual liberties must be balanced against the interests of the institution in preventing the individual from harming himself or others residing or working in the institution. *Id.* at 222-23. In *Harper*, the Supreme Court applied the balancing test and concluded "the Due Process Clause permits the State to treat a prison inmate who has a serious mental illness with antipsychotic drugs against his will [] if the inmate is dangerous to himself or others and the treatment is in the inmate's best interest." *Id.* at 227. The question presented in the instant case is different from that in *Harper* because the state is not forcibly medicating Thompson, rather, he is voluntary taking the medication, despite his argument to the contrary that he is being medicated involuntarily. Regardless of his personal reasons for taking the medication, the State is not administering the medication to Thompson against his will. Consequently, it is only the involuntary administration of antipsychotic medications by the government that implicates a constitutional right. *See Sell v. United States*, 539 U.S. 166, 178-79 (2003) (addressing issue of whether forced administration of antipsychotic drugs to render defendant competent to stand trial unconstitutionally deprives him of his liberty to reject medical treatment).

57

There is no United State Supreme Court nor Sixth Circuit authority deciding whether the constitution permits the involuntary administration of antipsychotic medication of a death-row inmate to render the inmate competent for execution. Two state courts have concluded such a practice is prohibited but those courts have based their decision on state law grounds and not on the United States Constitution. *See State v. Perry*, 610 So.2d 746 (La. Sup. Ct. 1992); *Singleton v. State*, 437 S.E.2d 53 (S.C.Sup.Ct. 1993).

However, in *Singleton v. Norris*, 319 F.3d 1018 (8th Cir.), *cert. denied*, 540 U.S. 832 (2003), the Eighth Circuit concluded that a state may execute a prisoner who has been involuntarily medicated under a *Harper* procedure consistent with the Constitution.[18] Singleton was under an involuntary-medication order which was subject to annual review.[19] The *Singleton* court first addressed the issue of whether the state may forcibly administer antipsychotic medication to a prisoner whose date of execution has been set. Singleton argued that the involuntary medication regime, although initially legal, became illegal once an execution date was set because it was no longer in his best medical interest. The *Singleton* court "held that the mandatory medication regime, valid under the pendency of a stay of execution, does not become unconstitutional under *Harper* when an execution date is set." *Id.* at 1026.

---

[18]     The *Singleton* case has been heavily criticized in numerous law review articles and other publications. *See, e.g.,* Jeremy P. Burnette, *The Supreme Court "Sells" Charles Singleton Short: Why the Court Should Have Granted Certiorari to Singleton v. Norris After Reversing United States v. Sell*, 21 Ga.St.U.L.Rev. 541 (2004); Lisa N. Jones, *Singleton v. Norris: The Eighth Circuit Maneuvered Around the Constitution by Forcibly Medicating Insane Prisoners to Create an Artificial Competence for Purposes of Execution,* 37 Creighton L.Rev. 431 (2004); Richard J. Bonnie, *Mentally Ill Prisoners on Death Row: Unsolved Puzzles for Courts and Legislatures,* 54 Cath.U.L.Rev. 2269 (2005).

[19]     During the time of his appeal, his doctors did not renew the order and Singleton was taking his medications voluntarily.

58

Singleton also claimed that the Eighth Amendment prohibited the execution of a prisoner who is "artificially competent." The *Singleton* court found that the state was under an obligation to administer antipsychotic medication, and any additional motive or effect was irrelevant. The Court concluded that "[a] State does not violate the Eighth Amendment as interpreted by *Ford* [*v. Wainwright*, 477 U.S. 399 (1986)] when it executes a prisoner who became incompetent during his long stay on death row but who subsequently regained competency through appropriate medical care." *Id.* at 1027.

However, as set forth above, there is no persuasive evidence before this Court that Thompson is being forcibly medicated by the State of Tennessee to render him competent to execute. Therefore, the facts do not warrant a decision on the *Harper-Singleton* issue, even if Thompson were to overcome his procedural default and the statute of limitations.

As a final observation, the Court notes that Thompson has been medicated for years as he has been a danger to himself in the past and the medication has been provided to treat his mental illness. This is not an instant where the state has just begun to medicate Thompson so as to render him competent to be executed. In Thompson's case, he participated in the conservatorship proceedings which authorized the medication on grounds other than for the purpose of making him competent to execute. Nowhere in the record is there any evidence that Thompson pursued a claim in state court attempting to cease forcible antipsychotic medication. As a matter of fact, the most recent affidavit from Dr. Sultan, petitioner's expert, reflects that during their July 28, 2005 meeting, Thompson "had recently requested additional medication to assist him in coping with these hallucinations and depressive thoughts. According to the medical records, additional medication has, in fact, been provided to Mr. Thompson in response to his request." [File No. 17, Attachment A].

59

As previously observed, there is no Supreme Court precedent which holds that it is unconstitutional to execute a chemically-competent inmate or one who has regained competency through forced medication. Accordingly, Thompson has not demonstrated he is entitled to habeas relief on this claim as he has procedurally defaulted this claim, is time-barred from raising this claim, and in the alternative, has failed to direct the Court to any Supreme Court precedent which holds it is unconstitutional to execute a chemically-competent inmate under the facts presented in this case.

**D.     Execution Violates International Legal Obligations**

Thompson argues his execution will violate international legal obligations binding on the United States.  Thompson asserts that on April 1, 2004, the Inter-American Human Rights Commission of the Organization of American States ("Commission") requested the government of the United States to take urgent measures necessary to prevent the State of Tennessee from carrying out the execution of Gregory Thompson which was then scheduled for August 19, 2004.  Thompson recently filed a reply to the State's answer to his second amended petition [Court File No. 48].  In his reply, Thompson asserts the international community recently made public its universal condemnation of Thompson's execution, and this claim is now ripe for review.  Thompson claims the findings of the Commission in his case are an authoritative determination of the United States' binding obligations under international law.  According to Thompson, a State which fails to stay an execution while a case is pending with the Commission violates international law.

**1.     Second or Successive Habeas Application**

The claim presently pending before this Court is Thompson's competency-to-be-executed claim.  Thompson's claim that his execution would violate international legal obligations constitutes a successive habeas application under § 2244(b)(2).  As such, this Court lacks jurisdiction to

60

adjudicate this claim at this time. Thompson must first obtain authorization from the Sixth Circuit before this Court is permitted to consider the merits of this claim. Accordingly, this Court concludes Thompson has failed to present any evidence showing that this claim is cognizable in this competency-to-be-executed habeas petition.

## 2. **Procedural Default**

Petitioner's international law claim is procedurally defaulted. Thompson has never properly presented this claim to the Tennessee courts for consideration. In his appeal from the Coffee County Circuit Court's rejection of his claim of incompetency, Thompson did not raise this claim. Although on April 2, 2004, Thompson filed a document entitled "Notice of Inter-American Human Rights Commission of the Organization of American States Request of the United States to Take Precautionary Measures to Prevent the State of Tennessee from Carrying out the Execution of Gregory Thompson Presently Scheduled for August 19, 2004 and Request for Stay of Execution," he never raised an international law claim as a basis for relief from his death sentence in the Tennessee state courts. Indeed, the Tennessee Supreme Court disposed of Thompson's claim by denying his motion "requesting a stay of execution to allow the Commission time to consider his petition[.]" *Thompson v. State*, 134 S.W.3d at 176.

This claim was presented in State court as a request for a stay of execution pending the Commission's disposition of Thompson's petition. However, the Tennessee Supreme Court did discuss the request and stated international treaties are not binding upon it. Thompson claims this holding demonstrates he has exhausted his remedies and the claim is properly before the Court. Assuming Thompson is correct, his request for habeas relief would still be denied because he has

61

failed to demonstrate that the state court's conclusion that international treating are not binding in this situation is contrary to, or an unreasonable application of federal law.

Accordingly, in addition to this claim constituting a second or successive habeas petition under § 2244(b)(2), because Thompson never properly raised his international law claim in competency proceedings in state court, it is procedurally defaulted. In the alternative, Thompson has failed to demonstrate the State court's conclusion that international treaties are not binding upon it in this situation is contrary to or an unreasonable application of federal law. This claim will be **DISMISSED**.

### E.    <u>Present Insanity Hearing</u>

Thompson asserts that he is entitled to a federal evidentiary hearing to determine his present competency. Thompson claims the state court did not render judgment on the Eighth Amendment issue nor did it provide adequate proceedings. Thompson contends that, as in *Ford*, no state court issued any determination to which the presumption of correctness should apply. Thompson's assertions are incorrect.

The *Ford* Court observed that "[i]f federal factfinding is to be avoided, then, in addition to providing a court judgment on the constitutional question, the State must also ensure that its procedures are adequate for the purpose of finding the facts." *Ford*, 477 U.S. at 411. As this Court has previously discussed in this opinion, Tennessee's procedures for determining competency to execute in Thompson's case satisfied the requirements of *Van Tran* and *Ford*. The state court concluded Thompson failed to meet the threshold showing that his competency was genuinely at

62

issue, and he subsequently failed to demonstrate a substantial change in his mental health,[20] both of which necessarily mean he is competent to be executed. Therefore, in compliance with *Ford*, the state court provided a judgment on the constitutional question.

Consequently, Thompson's assertion that the state court failed to render a judgment on the Eighth Amendment issue is incorrect. The state court rendered a judgment on Thompson's Eighth Amendment competency-to-be-executed claim and substantial-change claim when it concluded Thompson failed to meet the threshold showing that his competency was a genuine issue and when it concluded Thompson failed to show a substantial change in his mental health.

### 1. State Court Imposed an Unjustified Presumption of Competency

Thompson contends there is no background of prior competency to justify the state court requiring him to make a "threshold showing" that his competency is in question. Thompson asserts the state court's application of the threshold was unreasonable because there was no pre-trial hearing on competency. Moreover, Thompson claims that given his twenty-year history of mental illness,

---

[20]     Initially, Thompson's execution date was stayed by this Court pending disposition of a federal habeas petition under 28 U.S.C. § 2254 challenging the state court's competency determination and by the United States Court of Appeals for the Sixth Circuit in a decision purporting to vacate its previous decision affirming the dismissal of Thompson's first federal habeas petition. Subsequent to both stays being lifted, the Tennessee Supreme Court re-set Thompson's execution date for February 7, 2006. On September 29, 2005, Thompson filed a motion in the Tennessee Supreme Court requesting a stay of execution, citing a substantial change in his mental health status since the Court's previous competency determination. On October 18, 2005, the Tennessee Supreme Court allowed Thompson until November 18, 2005, to submit any further affidavits in support of his claim of a substantial change in mental health status. On November 18, 2005, Thompson submitted a "Supplemental Filing in Support of Mr. Thompson's *Ford/Van Tran* Claims."

After consideration of Thompson's original Notice of Change in Mental Health Status, his supplemental filings, and the State's response, the Tennessee Supreme Court denied Thompson's motion for stay of execution on December 13, 2005, finding that he failed to show that there has been "a substantial change in his mental health since the previous determination of his competency.

63

deference to a presumption of competence was wrong and requiring him to satisfy a heightened "threshold showing" was unjustified and unreasonable. Contrary to Thompson's argument attacking the presumption of his competency, and as previously addressed in this opinion, the state court correctly presumed he was competent since there is no record of any adjudication of his incompetency.

In a separate concurring opinion in *Ford v. Wainwright*, 477 U.S. 398, 425 (1986), Justice Powell explained that when a death-sentenced inmate has been judged competent to stand trial or his competency was sufficiently clear so as not to raise a serious question for the trial court, then the state may properly presume the petitioner remains sane at the time sentence is to be carried out and require a substantial threshold showing of insanity merely to trigger the hearing process. Thompson again confuses his mental illness with competency. Thompson's history of mental illness does not render him incompetent.[21] Consequently, Thompson's mental illness does not prevent the state court from presuming he is competent or excuse him from the requirement that a petitioner must make a threshold showing that his alleged incompetency is genuinely at issue.

Thompson claims he has been certified incompetent on at least two occasions. However, the records before this Court reflect that his allegation is inaccurate. Thompson refers the district court to Court File No. 30, File 8 which consists of the Technical Record. The first three pages to which Thompson refers the Court, pages 89-91, consists of a Certification of Mental Emergency (p. 89), a Mental Health Emergency Medication Form (p. 90), and a Mental Health Treatment Plan (p. 91). Although the Court was unable to decipher some of the writing on the forms, it does not appear that

---

[21]    For a discussion of Thompson's prior legal proceedings where he raised a claim of competency, *see* Claim A.6.c.(3), Unreasonable Application of Presumption of Competency, *supra.*

64

any of the forms certify Thompson incompetent. Thompson also referred the Court to page 124 which is a Problem Oriented-Progress Form. The Problem Oriented-Progress Form did not reflect that Thompson was certified incompetent. The documents found on page 151-153 in File No. 9 consists of a letter from Dr. Arney recommending Thompson for conservatorship and a couple of reports, none of which certify Thompson as incompetent.

Thompson confuses his mental illness with competency. The fact that Thompson suffers from mental illness does not mean he is incompetent. Questions about Thompson's mental health have been raised throughout his criminal, post-conviction, and habeas proceedings; however, the record does not reflect that Thompson has ever been found incompetent during any of those proceedings. Consequently, the state court's decision presuming Thompson to be competent and requiring Thompson to make a threshold showing that his competency is a genuine, disputed issue before conducting a hearing, was not unreasonable.

## 2. Satisfaction of "Threshold Showing"

Next Thompson asserts that he satisfied the threshold showing because he raised a genuine, substantial issue regarding his present sanity. The record reflects Thompson suffers from a long history of mental illness. However, the state court records, which include Thompson's Notice of Change in Mental Status [Court File No. 30, File 17] and the supplemental affidavits submitted by his experts, fail to meet the threshold showing that his competency to be executed is genuinely at issue. As previously discussed in this memorandum opinion, Thompson's expert evidence in his initial state proceeding raising his competency-to-be-executed claim revealed that although Thompson is mentally ill, he nevertheless, meets the competency-to-be-executed standard identified in *Ford* and *Van Tran*. Consequently, this Court has previously concluded that the State court's

65

conclusion that Thompson failed to meet the threshold showing of a genuine issue regarding his present insanity was neither an unreasonable determination of the facts, nor was it contrary to, or an unreasonable application of federal law. Nevertheless, the Court will address Thompson's claim that he made the threshold showing in his initial competency proceedings.

For a discussion of the documentation considered, and the Court's reasoning for concluding Thompson failed to meet the standard to make the required threshold showing *see* Claim A, *supra.* In addition, the Court will highlight the shortcomings of Thompson's proof showing why he failed to meet the threshold showing that his competency was a genuine issue.

First, Dr. Rabun's January 29, 2004 report, reflects that Dr. Rabun questioned Thompson about the reason for his incarceration and Thompson "readily admitted that he killed Brenda Lane" [Addendum No. 6, Exhibit 8, p. 7]. Thompson reported he and a female friend kidnaped Brenda Lane and he again reported he killed Brenda Lane. In addition, Thompson "indicated that he was convicted of 'First Degree Murder' and during the 'second phase' was sentenced to 'death'" [Addendum No. 6, Exhibit 8, p. 7]. Dr Rabun noted four facts which suggested Thompson was competent to be executed: 1) Thompson stated executions in Tennessee are by lethal injection or the electric chair; 2) Thompson stated he was convicted in 1985 of killing the victim, Brenda Lane; 3) Thompson told Dr. Rabun he received the death penalty during the second phase of his trial; and 4) Thompson stated he knew the State of Tennessee was seeking to execute him [Addendum No. 6, Exhibit 8, p. 12].

Although Dr. Rabun lists eight factors which he suggests indicate Thompson lacks the capacity to be executed based on numerous delusional beliefs, Dr. Rabun's report ultimately reflects

66

that Thompson knows the State of Tennessee is seeking to execute him because he murdered Brenda Lane. That is all that is necessary to demonstrate Thompson is competent to execute.

Dr. Woods report was unhelpful to Thompson because Dr. Woods failed to address the critical inquiry under *Van Tran* of whether Thompson is aware of the fact of his impending execution and reason for it. Dr. Sultan's report reflects that although Thompson has delusional beliefs relating to the State's ability to carry out the execution he is aware he has been sentenced to death for committing murder. Consequently, there is evidence in the record to support the conclusion that Thompson is aware of his punishment and the reason for it– the State seeks to execute him for the murder of Brenda Lane.[22] Thompson's delusional beliefs do not demonstrate he is unable to understand that he is facing execution for murdering Brenda Lane. Accordingly, Thompson has not met the required threshold showing and this claim will be **DISMISSED**.

### 3.   Evidentiary Hearing

Thompson maintains that he is entitled to an evidentiary hearing because he cannot be charged with failing to develop his claim in state court since the state court denied him a hearing. Thompson contends the petition alleges facts that, if proved, entitle him to relief. Moreover, Thompson asserts he presented a factual basis of his Eighth Amendment claim to the state courts but the state denied him a full and fair hearing; denied him access to information which was in the state's possession and which would have leant support to his claims; and denied him an adequate proceeding with a qualified judge.

---

[22]      Just as an observation, the Court notes that Thompson attached a newspaper article dated February 2, 2006. The article reflects that during his interview Thompson acknowledged he murdered Ms. Lane and he is sentenced to death.

Thompson argues, quoting *Ford* "[w]ithout some questioning of the experts concerning their technical conclusions, a factfinder simply cannot be expected to evaluate the various opinions, particularly when they are themselves inconsistent." *Ford*, 477 U.S. at 415. Thompson relies upon this quote to support his contention that the state court denied him an evidentiary hearing and, his argument that he is entitled to an evidentiary hearing in this Court. However, this quote is taken out of context. This quote is found in a portion of the *Ford* opinion discussing a flaw in the Florida procedure denying a petitioner the opportunity to challenge or impeach state-appointed psychiatrists' opinions by engaging in cross-examination of the psychiatrists to seek the "truth in sanity disputes by bringing to light the bases for each expert's beliefs, the precise factors underlying those beliefs, any history of error or caprice of the examiner, any personal bias with respect to the issue of capital punishment, the expert's degree of certainty about his or her own conclusions, and the precise meaning of ambiguous words used in the report....The failure of the Florida procedure to afford the prisoner's representative any opportunity to clarify or challenge the state experts' opinions or methods creates a significant possibility that the ultimate decision made in reliance on those experts will be distorted." *Ford,* 477 U.S. at 415.

Thompson's reliance on this portion of the *Ford* opinion is unavailing since there were no state-appointed psychiatrists for Thompson to cross-examine. The State did not submit any evidence during Thompson's state court competency proceedings. The only psychiatric evidence submitted were the reports from Thompson's experts. Moreover, the only evidence presented in the state court competency proceedings was evidence submitted by Thompson. Consequently, there were no psychiatric opinions or any other evidence for Thompson to challenge.

68

In proceedings to determine a prisoner's competency to be executed, courts usually consider the testimony and records from several qualified mental health experts, each offering his or her own version of an inmate's level of mental illness. However, the judge must make the ultimate decision of competency. The record supports the conclusion of the trial judge and the Tennessee Supreme Court that Thompson failed to meet the required threshold showing to warrant an evidentiary hearing. Thompson was given the opportunity to develop his claim in State court. Under the circumstances of Thompson's case, the lack of evidence to support his claim does not equate to a denial of an opportunity to develop his claim in State court, but rather, demonstrates he is competent to be executed.

In compliance with *Ford*, the competency procedures outlined by the Tennessee Supreme Court in *Van Tran* and implemented in Thompson's state court proceedings, provided sufficient due process to Thompson. The most demanding standard of minimum procedural requirements for competency proceedings was espoused by the plurality opinion in *Ford*, which was authored by Justice Marshall. Justice Marshall suggested that the state competency procedures must permit the prisoner faced with execution to submit material relevant to the competency determination, give the inmate an opportunity to challenge or impeach the State's mental health evidence through cross-examination, and include a judicial determination of the issue of competency. *Ford*, 477 U.S. at 413-416. However, Justice Marshall made it clear that he was not suggesting "that only a full trial on the issue of sanity will suffice to protect the federal interests; we leave to the State the task of developing appropriate ways to enforce the constitutional restriction upon its execution of sentences." *Id.* at 416-17.

69

The record reflects that Tennessee Courts provided Thompson all the Due Process constitutionally required for him to present his competency-to-be-executed claim and his change-in-competency claims. The fact that Thompson failed to satisfy the threshold showing of present incompetence or change in competency, does not render Tennessee's procedures inadequate or ineffective to safeguard his substantive Eighth Amendment rights. Thompson has failed to demonstrate any deficiency in Tennessee's procedure, as set forth in *Van Tran* or as applied in his case, that prevented him from developing the factual basis of his claim in state court so as to justify an evidentiary hearing in this Court. Moreover, Thompson has failed to present any evidence which necessitates an evidentiary hearing in this Court.

The Court has previously concluded, in this memorandum opinion, that the state court decision was neither an unreasonable determination of facts nor contrary to, or based upon an unreasonable application of federal law as determined by the United States Supreme Court. This Court permitted Thompson to obtain limited discovery from the State. At this time, Thompson has not notified this Court of any discovery of evidence relevant to his competency or which would provide support for his claims. Therefore, Thompson has not demonstrated that an evidentiary hearing is required under the circumstances of this case. Accordingly, Thompson is not entitled to such a hearing.

## IV.
## CONCLUSION

In addition to concluding that Thompson's State court proceedings satisfied Ford's Due Process requirement, the Court also concludes that the State court decisions on Thompson's competency-to-be-executed claim and his substantial-change-in-mental-status claim were neither contrary to, or an unreasonable application of federal law, nor an unreasonable determination of the

70

facts. Accordingly, Petitioner is not entitled to an evidentiary hearing, and his § 2254 petition will be **DISMISSED**.

A separate Final Order will enter.

R. ALLAN EDGAR
UNITED STATES DISTRICT JUDGE